H. S. MORGAN & Co. v. W. A. AND V. A. TAYLOR.

1—A producer of cotton, still ungathered, contracted verbally with his creditor that he, the producer, would gather the cotton and take it to a designated ginhouse, to be ginned and baled ; that the creditor should furnish the baling and rope, take the cotton to market when baled, sell it and apply the proceeds to the producer's indebtedness. The producer gathered the cotton and took it to the gin, where it was received as his property, and where it was soon afterwards attached by another of his creditors. A trial of the right of property ensuing between the attaching creditor and the other one, who claimed to be a purchaser by virtue of the above contract, it is *held* that the contract did not constitute a sale of the cotton, or divest the property out of the producer as against the attachment.

2—The indispensable element of a delivery is wanting to constitute this transaction a sale, or to change the property as against the attachment.

3—The further fact that an agent of the contracting creditor marked some of the cotton with the mark of the producer, while it was at the gin, tends rather to repel than to support an inference of a delivery under the contract.

4—See the statement of the case for instructions to the jury, which are highly commended by this court as a clear exposition of the law applicable to the facts.

ERROR from McLennan. Tried below before M. A. Long, Esq., special judge.

The opinion of the court states such of the facts as are involved in the decision. Morgan & Co., the plaintiffs in error, were the claimants of the property as against the appellees,

who attached the cotton as the property of J. N. Smith, the defendant in the attachment.

The cause was tried at the December, term, 1867, when the following instructions were given to the jury by the court below:

"1. In the trial of this issue as to the ownership of the cotton at the date of the levy of the attachment, the claimants, Morgan & Co., held the affirmative, and are therefore bound to prove a good title to the property in themselves.

"2. As between the parties, delivery of possession is not essential to the completion of a sale of chattels, unless made so by the terms of the bargain; but as against an attaching creditor, such delivery of possession, actual or constructive, is essential to the completeness of such a sale. The change of possession, like other parts of the transaction, must be by the will of both parties, and with the design of rendering the sale complete. If anything remains to be done by the vendor which is material or important before the vendee can identify or possess the thing sold, or before it becomes deliverable, the sale is executory and incomplete, and the property does not pass absolutely to the vendee.

"3. If the proof should satisfy the jury that the claimants, Morgan & Co., advanced to Smith, the defendant in the attachment, money upon his cotton crop, with the understanding and agreement that the said cotton should, when gathered and prepared for market, be delivered to said claimants to ship and sell, and apply the proceeds to the payment of such advances, such a transaction would not vest in the claimants such a lien on the cotton as to defeat the lien which the law gives to the levy of an attachment of a creditor upon said cotton."

No brief for the plaintiffs in error has come to the hands of the reporter.

*Bowers, Walker & Cullen*, for the defendants in error, cited, on the question of delivery, Furlow v. Gillian, 19 Texas, 250;

Hanson v. Myer, 6 East, 614; Ward v. Shaw, 7 Wendell, 407, and 1 Parsons on Contracts, 527.

Lindsay, J.—In this case, upon the trial of an issue formed, as to the right of property between an attaching creditor and one who claimed to be a purchaser, a verdict and judgment was rendered in the court below in favor of the attaching creditor.

The attachment was levied upon cotton at the gin of a third party, where it had been taken by the producer, and was then undergoing the process of ginning and baling, preparatory to being taken to market. Each of the parties to the issue was a creditor of the producer; and in this struggle for the appropriation of the product of the labor of their common debtor, it was a race of diligence, not only legitimate in itself, but which the law favors and rewards by its judgments.

The claimant of the cotton alleged that he had made a contract of purchase with the producer, before the cotton was taken to the gin. The specifications of the terms of that alleged contract of purchase, showed that the producer was indebted to the claimant some $4000 or $5000, and they came to an understanding that the producer was to take his cotton to a certain gin-house in the neighborhood, to be ginned and baled; that the claimant was to supply the baling and rope for the cotton, and when ginned and baled he was to take it to market, sell it, appropriate the proceeds and give the producer a credit on the demand which he held against him for the amount of the proceeds of sale; that the cotton had not then been gathered; but it was supposed that there would be about thirty bales of it. No price was stipulated between the parties for the cotton. This is the full extent and scope of the verbal agreement between them, as testified to by the only witness who was present when the understanding took place, so far as the evidence discloses.

Does this state of facts constitute a sale of personal property in law?

We think it lacks several ingredients necessary to constitute a sale of personal property. There was no agreement upon the price of the article at the time of, or prior, or subsequent to this arrangement, from aught that appears in the evidence. But the most important ingredient, and one indispensable to constitute a sale of personal property, is entirely wanting. There was no delivery of the property. To make the most of it, it could not be regarded as anything more than a mere executory contract of bargain and sale, for a breach of which the parties might be entitled to their respective actions, sounding in damages, for non-performance. But it did not change the ownership of the property. There was no delivery of the property, either actual or constructive. The property was taken to the gin, as had been understood between them, but it was not delivered to the party with whom the understanding was had, nor to his agent. It was delivered to the owner of the gin, to be ginned and baled. It was a delivery, in fact as in law, to the owner of the gin upon bailment, a bailment for labor and service, in which there were mutual liabilities depending between the bailor and the bailee, which could not be dispensed with by either, without the consent of both. The owner of the gin testified that the cotton was delivered to him by the producer, in order that certain labor and service might be done about it by him ; that he received it as the property of the producer, and had no understanding with him that it was to be received as the property of another ; that he considered and treated it as the property of the producer ; and at the time of the levy of the attachment, he was engaged in performing and fulfilling the terms of the bailment, which then were incomplete and unfinished. There was not, nor could there be, a delivery to the claimant of the property, until the conditions of the bailment had been fulfilled, unless by the consent of the bailee. The mere marking of the six bales, already ginned and baled, with the initial letters of the name of the bailor, by the agent of the claimant, was no evidence of the assent of the bailee to a constructive

delivery to the claimant. On the contrary, it is most persuasive and even stringent evidence of the want of that assent, and the exclusion of all idea of any attempt at a constructive delivery to the claimant. If the claimant had been in fact a purchaser, to make it notorious and manifest, the bales should have been marked with the initials of his own name, as the owner of the property, which would have conduced to show a constructive delivery and the assent of the bailee of the cotton. But there is no evidence exhibited in the transcript of the record which evinces the performance of any act necessary to constitute a sale of personal movable property.

While the cotton was undergoing the process of ginning and baling, under the bailment of the ginner, the general property was in the producer, and there was a special property in the ginner. In this condition its destruction or loss by some inevitable casualty or accident would have been sustained by the producer, and not by the creditor, who, in this case, was only created a factor, or agent of the producer, to sell the cotton; and when so sold, to appropriate the proceeds to the liquidation of his debt, or so much thereof as the proceeds might be sufficient to extinguish. The legal ownership and absolute possession was in the producer at the time of the levy of the attachment, while the qualified property and actual occupancy were in the bailee, who had the right to retain until his particular *lien* for labor and service upon the property was satisfied.

We can perceive no error in the rulings of the court below. The charge to the jury was characterized by great clearness and logical precision in expounding the law to the jury; and upon the facts adduced in proof upon the trial, the jury were fully warranted in the finding which they made. Wherefore, the judgment is affirmed.

                                                    Affirmed.