WHALEY LUMBER CO. v. RELIANCE BRICK CO. et al. (No. 2917.)

Court of Civil Appeals of Texas. Amarillo. Jan. 4, 1928.

Rehearing Denied Jan. 18, 1928.

1. Mechanics' liens ⬅71—Company furnishing brick for use on premises impressed with homestead character had no mechanic's lien, where no contract was executed by owner's wife (Const. art. 16, § 50; Rev. St. 1925, art. 5460).

Where lot on which brick and tile were to be used had been impressed by owner with homestead character, company furnishing brick and tile had no mechanic's lien, where no contract was shown to have been executed by owner's wife, as provided by Const. art. 16, § 50, and Rev. St. 1925, art. 5460.

2. Mechanics' liens ⬅48—Company furnishing materials for erection of building had no materialman's lien, where materials were never used for construction (Const. art. 16, § 50; Rev. St. 1925, art. 5460).

Where building materials furnished and placed on lot were never used in construction of building, no materialman's lien arose, and issue in materialman's conversion suit as to whether owner of premises had abandoned homestead was immaterial; wife's execution of contract being required by Const. art. 16, § 50, and Rev. St. 1925, art. 5460, if property was homestead.

3. Appeal and error ⬅1048(3)—Leading questions asked party's witness held not prejudicial, where questions related to immaterial issue.

Action of trial court in permitting plaintiff's counsel to ask leading questions of defendant while he was on the witness stand as plaintiff's witness held not prejudicial error, where leading questions objected to related to immaterial issue.

4. Sales ⬅92—Release of parties to sales contract accompanied by actual or constructive redelivery of goods amounts to rescission.

Power to rescind a sale by agreement is coextensive with power to contract, and mutual release is sufficient consideration for the agreement; rescission being carried out by either actual or constructive redelivery of goods.

5. Sales ⬅92—Question whether sale of building materials was rescinded prior to resale held for jury, in materialman's action against subvendee for conversion.

Question whether sale of brick and tile furnished by materialman to owner of premises was rescinded by mutual agreement before attempted resale from owner of premises to his creditor in consideration of antecedent indebtedness held for jury in materialman's action against subvendee for conversion.

6. Fraudulent conveyances ⬅241(3)—One who on behalf of buyer paid freight on building materials placed on buyer's premises, who acquired no lien, was not entitled to object to rescission of sale.

Buyer's creditor, who had no lien by attachment or otherwise on brick and tile placed on buyer's premises for purpose of constructing building, was not entitled to object to rescission of sale of such building materials, notwithstanding fact that creditor had paid freight in behalf of buyer.

7. Subrogation ⬅31(4)—One paying freight on building materials placed on buyer's premises held not subrogated to carrier's lien, as against seller rescinding sale.

Person paying freight to railroad company in behalf of buyer of building materials held not subrogated to carrier's lien thereon, so as to hold materials, as against seller after rescission of sale, especially where materials were delivered to buyer and placed by him on his premises.

8. Carriers ⬅197(1)—Carrier's lien depends on possession, terminates on delivery of goods, and is not assignable.

Lien of carrier is merely a common-law lien, dependent on possession of the goods, which terminates on delivery to consignee, or on his order, and is generally not assignable.

9. Sales ⬅239—Subvendee, taking building materials and crediting full value thereof on pre-existing indebtedness of vendor, acquired only his vendor's title, as against original seller.

Creditor of buyer, who took building materials purchased, and credited full value thereof on pre-existing debt, held not bona fide purchaser, as to seller, where sale had been rescinded prior to transfer to buyer's creditor, and under such circumstances creditor as subvendee took only such title as his vendor had.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

10. Sales ⊕═239—Subvendee, taking building materials in consideration for buyer's antecedent indebtedness, after rescission of sale, held liable to original seller for conversion.

Where buyer of building materials released all his interest therein to seller, buyer's creditor, subsequently taking property as subvendee under bill of sale, acquired only buyer's title, where it was taken for antecedent indebtedness, and such subvendee was therefore guilty of conversion as to original seller.

Randolph, J., dissenting.

Appeal from District Court, Lubbock County; Clark M. Mullican, Judge.

Suit by the Reliance Brick Company against the Whaley Lumber Company and another. From a judgment for plaintiff, the named defendant appeals. Affirmed.

Bean & Klett, of Lubbock, for appellant.

Lockhart & Garrard and F. D. Brown, all of Lubbock, for appellees.

HALL, C. J. The Reliance Brick Company, hereinafter called brick company, sued the Whaley Lumber Company, hereinafter called the lumber company, and John Scott, alleging in substance that about the 18th day of August, 1925, the brick company sold John Scott 22,000 brick and 5,000 hollow tile of the value of $1,396; that Scott represented that he desired said brick and tile to use in constructing one or more houses on two certain lots in the town of Lubbock; that the lumber company had notice, at the time of the sale and delivery to Scott of said brick and tile, that Scott had not paid therefor; that, at the time of the sale and at all times since, the brick company had a constitutional materialman's lien upon said brick and tile and said lots to secure the unpaid purchase money; that the lumber company, without plaintiff's consent, at some date later than August 18, 1925, took possession of the brick and tile and moved them off of said lots and converted them to its own use; that defendant Scott received said brick and tile and unloaded them on said lots, to be used in the erection of brick buildings thereon, but that said buildings were never erected and were abandoned; that about August 1, 1925, or prior thereto, Scott told the officers and agents of the brick company that the buildings could not be completed and thereupon sold and transferred said brick and tile to the brick company in satisfaction of his debt to it; that, having no place to store said brick and tile, they were left on the lots by the brick company, with the consent of Scott, from which place they were moved by the lumber company shortly after August 18, 1925. The prayer is for judgment against the lumber company for its debt, interest, and cost of suit, and in the alternative for judgment against both defendants for its debt and a foreclosure of the mechanic's lien, and for interest and costs and for such other relief, general and special, as it may show itself entitled to in law and in equity.

The defendant Scott answered, alleging that about August 18, 1925, he bought the said building material and agreed to pay therefor; that they were contracted for to be used in the erection of a house on the lots described in the petition, which belonged to him, and that it was agreed that the brick company was to have a materialman's lien on said house and lots to secure the payment of said brick, and that he was arranging a loan to make the payments, and that the lumber company agreed to finance and pay for all brick and building material; that, for some reason, the loan did not go through and the lumber company refused to perform its agreement to furnish brick and materials, and, without his knowledge or consent, took the brick, hauled them off the lots, and appropriated them to its own use and benefit; that the lumber company had full knowledge of all the facts with reference to the purchase of said brick and tile, knew they had not been paid for, and that they were to be used in the construction of a house on said lots, and knew that the brick company was claiming a lien on the brick; that the brick have not been paid for, but that the lumber company, through its officers and agents, took and appropriated said material and converted it to its own use and benefit, without his knowledge, and that, by reason of that fact, the lumber company owes the brick company the amount claimed to be due for said brick. Scott's prayer was that plaintiff take nothing against him, and that he recover against the lumber company the value of the brick, if plaintiff recovered judgment against him.

The lumber company answered by general demurrer and general denial, and, further, that it was the owner of the brick and tile, having purchased them in good faith for valuable consideration from John Scott in October, 1925; that Scott was indebted to the lumber company in the sum of $1,379.05 and was given credit upon his account for said amount, and that the brick and tile were then and there delivered to the lumber company; that Scott represented that said material was clear of liens, and that he was the owner thereof; that it had no notice nor knowledge that plaintiff was claiming any liens on or interest in said brick when it acquired them. It further alleged, in the alternative, that, if it did not become owner of the brick and tile, it had a lien thereon for freight advanced to Scott in the amount of $382.40; prayed that plaintiff take nothing, and, in the alternative, that, if judgment was rendered against it, it be allowed

---

⊕═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

a credit of $382.40; and prayed further for general and special relief.

By way of answer to John Scott's pleading, the lumber company answered by general demurrer and general denial, and, further, that in October, 1925, Scott was indebted to it in excess of $1,379.05, and in payment thereof did sell and deliver the brick and tile to it; that Scott had previously stated that he had on the cars in the railway yards at Lubbock several cars of brick and tile and was unable to pay the freight, and the lumber company advanced the money to pay said freight in the sum of $382.40; that the defendant Scott represented to the lumber company, at the time of the sale and delivery of the brick and tile to it, that he was the owner thereof, and that they were free and clear of all liens; that it believed said statements, relied thereon, and took the brick and tile in payment of the $1,379.05. The prayer is that the lumber company go hence without day and recover costs, and for judgment over against Scott in the event the brick-company should recover against it.

Trial was to a jury, and the court submitted special issues, which, together with the answers of the jury, are, in substance, as follows:

(1) A. A. Boggess (the lumber company's manager) knew that the brick in question were purchased for use in buildings on lots 11 and 12 in block 2.

(2) Boggess knew that these brick were not paid for at the time the lumber company took possession of them.

(3) John Scott turned the brick in question back to F. B. Caylor (the brick company's agent) for the Reliance Brick Company.

(4) The brick were turned back (to the brick company) prior to the time the lumber company bought them from John Scott.

(5) The brick were turned back in satisfaction of the debt of the Reliance Brick Company.

(6) Scott abandoned lot 11 as his homestead before the lumber company took possession of the brick.

In addition to these findings, the court found that the lumber company converted the brick to its own use and rendered judgment in favor of the brick company against the lumber company for $1,013.58, with interest from June 1, 1926, at 6 per cent. per annum, and costs of suit, and further decreed that the lumber company recover against John Scott the sum of $1,379.05, with interest from January 1, 1926.

[1-3] The first three propositions urged challenge the action of the court in permitting plaintiff's counsel to ask Scott leading questions while Scott was upon the witness stand as the plaintiff's witness. Reference to the bill of exceptions shows that the ques-

tions objected to related to the abandonment by Scott of his homestead claim to lot 11 and inquiries concerning his intention to appropriate it as a home.

We think these propositions relate to an immaterial matter. From the record it would seem that the lot upon which the brick and tile were to be used had been impressed by Scott with the homestead character. No contract having been shown executed by Scott's wife, as provided by Constitution, art. 16, § 50, and R. S. art. 5460, the brick company had no mechanic's lien. Scott testified that, since he abandoned his attempt to build, he had conveyed the lot to the lumber company. The finding by the court that the brick company had a constitutional lien on the brick and tile is an immaterial finding. The building material was never built into any residence, and so the issues of homestead and materialman's lien are not in the case. There is, therefore, no merit in these contentions.

[4, 5] By its remaining propositions the lumber company attacks the sufficiency of the evidence to sustain the jury's third and fourth findings. The effect of these findings is that by agreement between Scott and the brick company, acting through its agent Caylor, the sale was rescinded prior to the time the lumber company acquired any interest in the brick and tile, and we think the findings are supported by a preponderance of the uncontroverted evidence.

"The power to rescind a sale by agreement is coextensive with the power to contract, and the mutual release of the rights of the parties, under the contract of sale, is regarded as a sufficient consideration for the agreement. There must be a mutual assent to the agreement, and an unconditional acceptance of the proposal operates as a rescission. If the contract of sale is fully executed, redelivery of the goods is necessary to complete the agreement to rescind; but this requirement is fulfilled by a constructive delivery, as where the vendee holds the goods as bailee for the seller, especially if the sale is not fully executed by payment of the price. If, however, there is an actual delivery, it must be unconditional. The agreement to rescind may be by parole, and it is not essential that a party, in express terms, consents to the rescission, but such consent may be implied from his acts or conduct." 35 Cyc. 128–130; Lynch Davidson & Co. v. Denman Lumber Co. (Tex. Civ. App.) 270 S. W. 225.

Upon the question of rescission by agreement, Scott testified, in part, as follows:

"I told Mr. Caylor before I gave this bill of sale (to the lumber company) to sell these bricks or take them back, either one, and I also told Mr. Boggess to sell them if he could. * * * I don't know how long it was after I told Mr. Caylor that he could take charge of the brick until Mr. Boggess got them."

With reference to this issue, Caylor testified as follows:

"After this loan (to Scott) fell through and Mr. Scott couldn't build the houses, he told me I could take the material and sell it at any time, sell it for charges at any time, so I left them on the lots trying to find some one to buy them, and had not found any one until I discovered that the bricks and tile had been moved. * * * The reason I left that material there, after Mr. Scott told me I could have it back, in payment of the debt, was because I didn't have any place to put them and didn't want to pay an extra drayage charge on them. * * * The conversation between Mr. Scott and I, in which he told me that I could have the brick and tile back on what he owed me, occurred some 40 days after, or something like that, after the job had blowed up. I don't know the exact date that the job blowed up. The job blowed up soon after the brick got here and within 30 or 40 days after that he told me that I could have them back."

[6-8] There seemed to be some confusion in the minds of the witnesses with reference to when the brick and tile in question were unloaded at Lubbock, but it was shown that Caylor had sold several other cars of like material to other parties, and the question as to whether the rescission between Caylor and Scott occurred before the bill of sale was made by Scott to the lumber company was an issue of fact to be settled by the jury, and we do not feel authorized to set their finding aside. The lumber company could not object to a rescission of the sale. It had acquired no lien by attachment or otherwise upon the brick and tile. True, it paid the freight to the railway company for Scott, but by doing so it was not subrogated to the carrier's lien. The lien of a carrier in Texas is purely a common-law lien and terminates upon delivery of the goods to the consignee or upon his order, and its existence depends upon possession of the goods. It is conceded in this case that the materials were delivered to Scott and placed by him upon his lot. As a general rule, the carrier's lien is not assignable. 10 C. J. 463; 37 C. J. 239. Nor does the lumber company claim that the carrier ever assigned its lien in this case.

[9] The lumber company cannot be a bona fide purchaser since it took the material and credited the full value thereof upon a pre-existing debt against Scott. Overstreet v. Manning, 67 Tex. 657, 4 S. W. 248; Morrison v. Adoue, 76 Tex. 255, 13 S. W. 166; American Law Book Co. v. Dykes (Tex. Civ. App.) 278 S. W. 247; American Railway Express Co. v. Voelkel (Tex. Com. App.) 252 S. W. 486; Weld-Neville Cotton Co. v. Lewis (Tex. Civ. App.) 208 S. W. 731.

[10] By its bill of sale from Scott, the lumber company took only such title as Scott had and no more, and since the evidence shows, and the jury so found, that Scott had

relinquished all right to the brick and had released his interest to the brick company, in consideration of the satisfaction of his indebtedness to it, before the lumber company took possession, such taking was wrongful and amounts to a conversion.

For the reasons stated, the judgment is affirmed.

RANDOLPH, J. (dissenting). The Reliance Brick Company filed this suit in the district court of Lubbock county, against the Whaley Lumber Company and John Scott, to recover the value of certain brick sold by the plaintiff to said Scott and in turn sold by Scott to the defendant Whaley Lumber Company. Judgment for plaintiff against defendant Whaley Lumber Company and in favor of Whaley Lumber Company against Scott. From this judgment, appeal has been taken to this court by the Whaley Lumber Company.

The Reliance Brick Company, in its petition, alleges that it had sold defendant John Scott 22,000 brick and 5,000 hollow tile to construct one or more dwelling houses on certain lots in the town of Lubbock; that Whaley Lumber Company had notice, at the time of the sale and delivery of same to Scott, that Scott had not paid for them; that at the date of the sale, and at all times since, plaintiff had a constitutional materialman's lien against said brick and tile on said lots, to secure the unpaid purchase money owing for same; that Whaley Lumber Company, without plaintiff's consent, took possession of the brick and tile and moved same off the lot and thereby converted them to its own use; that defendant Scott received said brick and tile and placed them on said lots to be used in the erection of buildings thereon, and that said buildings were never erected; that about August 1, 1925, or prior thereto, Scott told the representatives of plaintiff that the buildings could not be completed and thereupon sold and transferred said brick and tile to the plaintiff in satisfaction of his debt to plaintiff; that, having no place to store the brick, they were left on the lots with the consent of John Scott, from which they were moved by Whaley Lumber Company shortly after August 18, 1925. The prayer of the petition was for recovery of its debt, interest, and costs of suit, a foreclosure of its lien, and for general and special relief.

Defendant Scott answered and admitted that he had never paid for the brick; that he owed the plaintiff as alleged; that Whaley Lumber Company had full knowledge of all the facts with reference to the purchase of the brick; and that they had not been paid for and knew that the plaintiff was claiming a lien on them. Further, Scott alleged that, in the purchase of the

brick from the plaintiff for the purpose of the erection of a certain house on said lot owned by him, it was agreed that the plaintiff was to have a materialman's lien on the house and lot to secure the payment of the account for the brick and tile; that, at the time of the purchase of the brick from the plaintiff, Scott was arranging a loan to pay for same and other materials to be used in the construction of such house, and that the defendant Whaley Lumber Company agreed to finance and pay for all the brick and building material to be used in such construction, and that, when said brick were placed upon the lots, it was understood that they were to be used in such construction; that, for some reason, the loan was not consummated, and the defendant Whaley Lumber Company failed and refused to perform its agreement to furnish the brick and material for said house, and said defendant, without the knowledge and consent of defendant Scott, removed the brick from said lots and appropriated them to its own use and benefit.

The Whaley Lumber Company answered, claiming the brick by reason of purchase in good faith for a valuable consideration, without notice, from Scott, having paid him the sum of $1,379.05, the said sum being represented by a pre-existing debt owed to it by Scott; that, in the event it is mistaken in this, then it has a first lien thereon to the extent of $382.40, for demurrage and freight, paid by it in order that the brick would be delivered to Scott by the railroad company.

Defendant Whaley Lumber Company also filed an answer to Scott's cross-action, setting up in detail its matters of defense, and praying for judgment over against Scott in the event of recovery by plaintiff against it.

While the pleadings of the parties set out that the brick in question were to be used for the purpose of erecting a "dwelling house" and "a house or houses" on the lots, the pleadings nowhere allege that the building being erected was the homestead of defendant Scott.

The trial court submitted the following special issues to the jury:

"Special issue No. 1: Did A. A. Boggess know that the brick in question were purchased to go into the buildings on lots Nos. 11 and 12, block 2? Answer yes or no. Answer: Yes.

"Special issue No. 2: Did A. A. Boggess know that these brick were not paid for at the time Whaley Lumber Company took possession of said brick? Answer yes or no. Answer: Yes.

"Special issue No. 3: Did John Scott turn the brick in question back to F. B. Caylor for the Reliance Brick Company? Answer yes or no. Answer: Yes.

"If you answer special issue No. 3 in the negative, you need not answer special issue Nos. 4 and 5. If your answer to No. 3 is in the affirmative, please answer the following special issues:

"Special issue No. 4: Based on your answer to special issue No. 3, were the brick turned back prior to the time Whaley Lumber Company bought same from John Scott? Answer yes or no. Answer: Yes.

"Special issue No. 5: Based on your answer to special issue No. 3, were same turned back in satisfaction of the debt of the Reliance Brick Company? Answer yes or no. Answer: Yes.

"Special issue No. 6: Did J. L. Scott abandon lot No. 11, block 2, as a homestead before Whaley Lumber Company took possession of the brick? Answer: Yes.

"You are the exclusive judges of the facts proven, of the credibility of the witnesses and of the weight to be given to their testimony."

Appellant presents a number of propositions and assignments that we do not think it necessary to discuss in this opinion—only discussing those that control the disposition of the case.

Defendant Scott bought the brick from the Reliance Brick Company on open order, and was therefore indebted to the plaintiff in open account. He executed no writing, but simply gave a verbal order, and same was charged to his personal credit.

There was no constitutional lien upon the material thus furnished Scott. The evidence discloses that John Scott, the defendant, was the owner of the lot upon which the brick he purchased from the plaintiff were to be used in the construction of a dwelling house, and, it not having been pleaded that such building was the homestead of Scott, if the building had been erected, plaintiff would then have had a constitutional lien upon same to secure the debt created by its furnishing the brick and tile which entered into such construction. This lien would have been solely by virtue of the provision in section 37, art. 16, of the Constitution of Texas, and without the necessity of filing the affidavit and bill of particulars provided in the statutes, and without the execution of any written contract. Howell v. McMurry Lumber Co., 62 Tex. Civ. App. 584, 132 S. W. 848; Strang v. Pray, 89 Tex. 525, 35 S. W. 1055; F. & M. National Bank v. Taylor, 91 Tex. 78, 40 S. W. 876, 966; De Bruin v. Santo Domingo Land & Irrigation Co. (Tex. Civ. App.) 194 S. W. 654; Wichita Falls Sash & Door Co. v. Jackson (Tex. Civ. App.) 203 S. W. 100, 101; McBride v. Beakley (Tex. Civ. App.) 203 S. W. 1137; Atkinson v. Jackson Bros. (Tex. Civ. App.) 259 S. W. 280; Lyon-Gray Lumber Co. v. Nocona Cotton Oil Co. (Tex. Civ. App.) 194 S. W. 633.

It being true that the Constitution is self-executing, in providing a lien in a proper case, as above discussed, the next question is upon what property does such lien become effective? In this case, appellee claims a lien upon the brick and tile which were placed upon the lots but were never carried into the building. The further question then is, Does the constitutional lien come into existence and become effective upon the material purchased at the time it was placed on

the lot when the evidence discloses that the material never was used in the construction of the building?

Section 37, art. 16, of our state Constitution, is as follows:

"Mechanics, artisans and materialmen, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

There is no lien provided by the Constitution upon the material, as such, but the lien is created only when same enters into the construction of the building, and it rests only on the building. In our view, when the materialman sells a bill of material to an owner of land, without a written contract, providing for the reservation of a lien, he sells it on open account and his debt is against the owner personally until such time as the material is placed beyond his reach by the owner of the lot using same in the construction of a building, and it is only then that the constitutional lien, under such circumstances, takes effect. The language of this article clearly indicates that such lien is limited to the *building*.

It is held in the case of Murphy v. Fleetford, 30 Tex. Civ. App. 487, 70 S. W. 989–990, that the lien was not on the material sold, but was only on the building, to the extent of the material that went into that building.

The lien granted by the Constitution is justified upon the ground that the material for which the lien is sold has been converted into the building. Hess v. Denman Lumber Co. (Tex. Civ. App.) 218 S. W. 162, 164 (writ denied).

Where a building has been erected and materials used which have been purchased from a materialman, such lien is only on the building and not on the real estate upon which the building is situated. Sommerville v. King, 98 Tex. 332, 83 S. W. 681.

The courts having given such construction to the language of the statute, with reference to the creation of the lien, by analogy, the lien created by the Constitution reaches no further.

The plaintiff having no lien, constitutional or otherwise, the next question for our consideration is, Was there a resale of the material by defendant Scott to the plaintiff, and had title to the brick and tile revested in the plaintiff at the time the defendant Whaley Lumber Company took possession of the same, or at the time of the execution of the bill of sale by defendant Scott conveying the brick and tile to Whaley Lumber Company?

The language used by Scott, in giving to plaintiff whatever right he is entitled to assert here, is testified to by Caylor, plaintiff's manager. According to his testimony:

Scott's statement at the time was for him to "take the material and sell it at any time, sell it for the charges at any time. So I left them on the lots, trying to find some one to buy them, and had not found any one until I discovered the brick and tile had been moved. I did not have any place to move the material. I did not have any yard here or storage for bricks. The reason I left that material there, after Mr. Scott told me I could have it back in payment of the debt, was because I didn't have any place to put them and didn't want to pay an extra drayage charge on them."

It is a fundamental rule that the minds of the parties must meet to constitute a sale. Whether a bargain between parties is a contract to sell or an actual sale depends upon whether the property in the material is transferred. 1 Williston on Sales, p. 3, § 2. This is as between the parties.

"In the formation of a bargain, intention of the parties does not mean secret intention, nor generally even intention manifested to third persons, but only the intention manifested to the other party. If the offeror understood 'the transaction to be different from that which his words plainly expressed, it is immaterial, as his obligation must be measured by his overt acts.'" 1 Williston on Sales, p. 5, § 5.

The plaintiff states what Scott told him, which was that he should have authority to sell the brick and apply them to his account, but, in referring to what Scott had done, he gives us his own conclusion, in referring to the fact that he had left them there "after Mr. Scott told me I could have it back in payment of the debt." This was clearly his conclusion at the time of his testimony. The plaintiff clearly understood that the authority given him was to sell the brick and tile. This is manifest in his trying to find a purchaser for them.

Where cotton was delivered to a gin, and, while there, was levied on by a creditor, and was claimed by another creditor by virtue of an alleged sale of same to him prior to the levy, the Supreme Court held:

"While the cotton was undergoing the process of ginning and baling, under the bailment of the ginner, the general property was in the producer, and there was a special property in the ginner. In this condition its destruction or loss by some inevitable casualty or accident would have been sustained by the producer, and not by the creditor, who, in this case, was only created a factor, or agent of the purchaser, to sell the cotton, and, when sold, to appropriate the proceeds to the liquidation of his debt, or so much thereof as the proceeds might be sufficient to extinguish." Morgan v. Taylor, 32 Tex. 363–367.

In the absence of a lien securing the debt of plaintiff, and in the absence of a sale to it of the brick and tile, the fact that the brick and tile were purchased of plaintiff to go into the building, and were not paid for, became immaterial.

The jury does not find that the brick and tile were sold by Scott to the plaintiff, but

only that they were turned back by Scott to the plaintiff. There is no question but what Scott did authorize the plaintiff to sell the brick and tile and the jury's finding is evidently based on this and not on a sale. However, if it is claimed that such finding does mean that the jury found there was a sale, the evidence wholly fails to sustain such finding.

There is another ground which, under our view of the case, absolutely precludes the plaintiff's recovery herein. While the jury finds that the defendant Whaley Lumber Company knew that the brick had not been paid for, there was no issue submitted to them as to whether or not they knew that the plaintiff was claiming to have repurchased the brick and tile. In the absence of such finding by the jury, it will ordinarily be presumed that the trial court made such finding to support his judgment, if the evidence authorized such finding. The evidence does not furnish any basis to charge the defendant Whaley Lumber Company with notice that the plaintiff was claiming title to the brick and tile by virtue of purchase from Scott. On the contrary, the evidence clearly shows that the defendant Whaley Lumber Company was ignorant of any such claim. Consequently, there can be no presumption based on the evidence to support said judgment of the trial court.

The above opinion was prepared by me as the opinion of the court—the case having been assigned to me. My associates having failed to agree on my conclusions and having rendered the judgment of this court, I respectfully dissent to the opinion rendered by them, and file this original opinion as my reasons for dissent to the disposition made of the case by the majority.