**J. R. GRAY COMPANY, Inc., Appellant,**

v.

**RITCHEY FLYING SERVICE, INC.,**
Appellee.

No. 4003.

Court of Civil Appeals of Texas.

Waco.

May 17, 1962.

Rehearing Denied June 14, 1962.

 

Hassell & Hassell, J. W. Hassell, Jr., Dallas, for appellant.

McGown, Godfrey, Logan & Decker, John W. McMackin and George Q. McGown, III, Ft. Worth, for appellee.

TIREY, Justice.

The action is one for damages (for commission on sale of an airplane) on an alleged implied contract of agency. The cause was tried without the aid of a jury. The Court found that the plaintiff was entitled to recover, and that the reasonable commission was the sum of $10,000.00 and decreed accordingly. At defendant's request the Court filed Findings of Fact and Conclusions of Law. We quote the pertinent parts: (1, 2, 3, 4, 5 and 6) That during the year 1960 Cleminson was a salesman for plaintiff, and Ritchey was President of plaintiff; that Gray was President of defendant, and Hubbard as sales manager for defendant; that in March or April 1960, Cleminson, as agent of plaintiff, originally contacted Harry Newton of Graham about the purchase or lease of a new airplane; that prior to May 27, 1960, Cleminson, as agent for plaintiff, made two additional contacts with Newton concerning the purchase or lease of a new plane; "(7) Subsequent to May 27, 1960, Ritchey Flying Service, Inc., was asked to make no further contacts with Harry Newton, but to allow J. R. Gray Company, Inc., solely, to continue negotiations. This request was made by George Hubbard, representing J. R. Gray Company, Inc. Ritchey Flying Service, Inc. did step aside in this transaction;

"(8) On or about July 13, 1960, an M–35 Beech Bonanza airplane was leased directly to Harry Newton by J. R. Gray Company, Inc.;

"(9) Ritchey Flying Service, Inc. was paid a commission of $5,357.80, or 20 per cent on the Harry Newton transaction by J. R. Gray Company, Inc.;

"(10) On March 21, 1960, Robert Cleminson, representing Ritchey Flying Service,

Inc., made the original contact with C. B. Christie of Wichita Falls, Texas, concerning the purchase of a new airplane;

"(11) On April 10, 1960, and April 18, 1960, Robert Cleminson, representing Ritchey Flying Service, Inc., made additional calls on C. B. Christie concerning the purchase of a new airplane;

"(12) Subsequent to April 18, 1960, George Hubbard and Edwin Ritchey jointly called on C. B. Christie of Wichita Falls, Texas, about the purchase of a new airplane;

"(13) Within a week after the trip to Wichita Falls, Texas, by Edwin Ritchey and George Hubbard, J. R. Gray Company, Inc., acting through George Hubbard, sold a new airplane to C. B. Christie. Ritchey Flying Service, Inc., was not notified of this sale until after it had been consummated;

"(14) Ritchey Flying Service, Inc., was paid a commission of $5,308.20, or 20 per cent, by J. R. Gray Company, Inc., on the sale of an M–35 Beech Bonanza to C. B. Christie;

"(15) On February 2, 1960, Edwin Ritchey and Robert Cleminson, representing Ritchey Flying Service, Inc., contacted Charles Prothro in Wichita Falls, Texas, concerning the purchase of a new Beech airplane, and particularly the new Beech Queen-Air;

"(16) Subsequent to February 2, 1960, and prior to the middle of July, 1960, Robert Cleminson, as agent for Ritchey Flying Service, Inc., made a number of contacts with Charles Prothro concerning the purchase of a new airplane;

"(17) In the middle of July, 1960, Charles Prothro's old airplane crashed in Colorado. Immediately after this accident, Edwin W. Ritchey was contacted by J. R. Gray and George Hubbard who asked that Ritchey Flying Service, Inc., step aside and let J. R. Gray Company, Inc., handle all further negotiations with Charles Prothro;

"(18) On September 6, 1960, Ritchey Flying Service, Inc., was billed $56.51 by J. R. Gray Company, Inc., which represented the cost of demonstrating a Beech-Queen-Air plane to Charles Prothro in Wichita Falls, Texas. This charge was paid by Ritchey Flying Service, Inc.;

"(19) On or about November 3, 1960, J. R. Gray Company, Inc., sold a new Queen-Air plane to Charles Prothro for $145,000.00;

"(20) Ritchey Flying Service, Inc., was not paid a commission on the sale of the airplane to Charles Prothro although its agents had made the original contacts, had stepped aside at the request of J. R. Gray Company, Inc., and subsequently Ritchey Flying Service, Inc., had paid the cost of demonstrating the plane which was purchased;

"(21) The Court further finds all additional facts, circumstances and inferences necessary to support its judgment herein rendered."

## "CONCLUSIONS OF LAW

"(1) The written contract between Ritchey Flying Service, Inc., and J. R. Gray Company, Inc., of January 20, 1960, was abandoned by the parties prior to the Newton, Christie and Prothro transactions.

"(2) Ritchey Flying Service, Inc., was the agent of J. R. Gray Company, Inc., in the lease of the new airplane to Harry Newton and the sale of new airplanes to C. B. Christie and Charles Prothro. Such agency arose by action of the parties in consummating each of these transactions;

"(3) Ritchey Flying Service, Inc., through its agents and employees, was instrumental in bringing together Charles Prothro and J. R. Gray Company, Inc., and J. R. Gray Company, Inc., as a result thereof, sold a new Beech Queen-Air airplane to Charles Prothro on terms satisfactory to J. R. Gray Company, Inc.;

"(4) Ritchey Flying Service, Inc., was the procuring cause of the sale to Charles Prothro by J. R. Gray Company, Inc., of the new Beech Queen-Air airplane;

"(5) Ritchey Flying Service, Inc., is entitled to a reasonable commission on the sale of the airplane to Charles Prothro;

"(6) A reasonable commission to Ritchey Flying Service, Inc., on the sale of the airplane to Charles Prothro based upon the extent and character of the services and the circumstances under which they were rendered is $10,000.00."

In response to defendant's motion for additional Findings of Fact, the Court further found:

"REQUESTED FINDINGS OF FACT

"(1) With regard to Defendant's Requested Finding No. 1, the Court finds that its original finding of fact No. 21 was made pursuant to and in conformity with Rule 299, Texas Rules of Civil Procedure and that therefore no further finding is necessary;

"(2) With regard to Requested Finding No. 2, the Court finds that Plaintiff and Defendant did enter into a written contract on January 20, 1960, designated as 'Dealer Agreement' but that as set out in Conclusion No. 1, heretofore filed by this Court, in its finding of fact and conclusion of law, such contract was abandoned by the parties prior to the Newton, Christie and Prothro transactions and that an agency relationship arose between Plaintiff and Defendant with regard to these transactions by action of the parties;

"(3) With regard to Requested Finding No. 3, the Court finds that Defendant did not account to Plaintiff for commissions under the terms of the contract of January 20, 1960, on the Newton and Christie transactions but accounted to Plaintiff for commissions as agents under the implied agency which arose by action of the parties;

"(4) With regard to Requested Finding No. 4, the Court finds that Harry Newton did not present himself at the offices of Defendant for the purpose of leasing or purchasing an airplane without solicitation by Defendant since such original solicitation was made by Defendant's agent, Ritchey Flying Service, Inc., through its agents and employees;

"(5) With regard to Requested Finding No. 5, the Court finds that C. B. Christie did not present himself at the offices of Defendant for the purpose of purchasing an airplane without solicitation by Defendant;

"(6) In view of the Court's finding in answer to Requested Finding No. 5, it is not necessary to make any finding with regard to Requested Finding No. 6;

"(7) With regard to Requested Finding No. 7, the Court finds that there was no discussion between Plaintiff and Defendant prior to November 1, 1960, regarding the withdrawal from or the cancellation of the contract of January 20, 1960; and the Court further finds that such withdrawal or cancellation was not necessary since Plaintiff and Defendant wholly abandoned such contract prior to the Newton, Christie and Prothro transactions and that such transactions were consummated on the basis of an implied agency agreement between the parties which arose by action of the parties;

"(8) With regard to Requested Issue No. 8, the Court finds that such finding would be irrelevant to any issue in this case since under the allegations of Plaintiff and proof adduced at the trial Plaintiff is entitled to a reasonable commission on the Prothro sale as procuring agent which the Court has heretofore found to be the sum of $10,000.00."

■ The judgment is assailed on what appellant designates as 24 Points. Points 1 and 2 are to the effect that the Court erred in failing to sustain exceptions 3, 4, 6 and 9, because such exceptions sought to re-

**400**

quire plaintiff to make a proper declaration of its cause of action that it intended to establish; and 2, because the allegations complained of were of an implied contract, and because the petition showed upon its face that there was an express contract between the parties, there being no pleading in the alternative. We overrule each of these Points for reasons which we shall hereinafter briefly state. The plaintiff went to trial on its first amended petition. It is true that this pleading did allege that plaintiff entered into a dealership contract on January 20, 1960, but that after orders for the first 4 airplanes were made, giving the dates and style of the claims, that this contract was completely abandoned by the parties, and that plaintiff relied for its recovery on an implied contract. The pleading alleged specifically three sales by naming purchasers; how such sales were made and by whom they were made for the purpose of showing abandonment of the written contract, and further alleged the method of compensation paid to it by appellee for two of the three sales, and further alleged appellant failed to compensate appellee for the third sale. It specifically alleged the terms of the third sale and reasons why it was entitled to a commission, and also alleged it was a procuring cause of the third sale to Prothro, and further alleged that its reasonable commission on said sale, due to its relationship with appellant as its agent, was the sum of $15,000.00. The petition further alleged exemplary damages, but this feature was stricken and no errors cross assigned. We are of the view that plaintiff's amended pleading meets the provisions of Rule 47, Texas Rules of Civil Procedure, and that there was no error in overruling the special exceptions. This view is supported by 2 McDonald, Texas Civil Practice, Sec. 612, p. 552. Appellee, by its pleading, did not attempt to recover on the express contract referred to in its pleadings, but on the contrary alleged that this contract was abandoned by the parties, and that an implied contract arose by the subsequent action of the parties. In McDonald v. Wm. Cameron & Co., Tex. Civ.App., 80 S.W.2d 1065, n. w. h., we find this statement of the Rule:

"An implied contract is one which arises from the dealings of the parties, from which it is apparent that the minds of the parties met on the terms of the contract without any legally expressed agreement thereto. The implied contract ofttimes is established in the fact of the contention of one of the parties that he did not so agree or understand himself to be agreeing to any such contract. This is sometimes said to be, because it would be inequitable to allow him to repudiate the benefit of his acts," (citing cases).

See also Martin v. Campanaro, 156 F.2d 127, Cir.Ct.App., 9 Cir., Writ of Cert. denied, 329 U.S. 759, 67 S.Ct. 112, 91 L.Ed. 654. We think it is clear from the pleadings of the appellee and the evidence submitted to the Court that the recovery in this cause is and was based on an implied contract and not on any theory of quantum meruit or quasi-contract.

Points 3 to 5 inclusive are to the effect that the Court erred in rendering judgment on an implied contract because it was undisputed that the parties had entered into an express contract, and because appellee had plead an express contract, and because there was no showing of a rescission by the parties, and recovery could be had only if authorized by the written contract; that since appellee had contracted in writing as a dealer in airplanes distributed by appellant and was unsuccessful in making any sales except such as were procured through the efforts of appellant, and which sales were accounted to appellee as though the same had been made by appellee and were accountable under the contract, that appellee cannot be heard to say that the contract itself had been abandoned and could not recover as in quantum meruit upon an implied obligation. We overrule each of these points for reasons which we shall hereinafter briefly state. We have

previously stated that pleading is sufficient to admit proof showing an abandonment of the original contract entered into between the parties, and that it is likewise sufficient to admit proof that an implied agency was thereafter created by action of the parties. It is clear from the terms of the written contract that (1) planes were to be sold by appellant to appellee for resale; and (2) appellee was to receive a discount on the list purchase price from appellant; (3 and 4) appellee was free to set its own selling price, and appellee was never called upon to pay for appellant's demonstration flights; (5) commission paid to appellee on sales were never contemplated by the terms of the original contract between the parties. As we understand appellant's contention, it is that since the parties hereto entered into the dealership contract dated January 20, 1960, that such contract remained binding upon the parties in the face of ample testimony which shows the abandonment of that contract subsequent to January 20, 1960. Appellee specifically set out three separate sales on which it relied, and on which it tendered evidence. Testimony tendered is to the effect as to the first of these transactions, plaintiff contacted and found prospect Newton, and that during the time that these negotiations were in force and effect, plaintiff was requested to discontinue its negotiations with the prospect prior to the sale, and all the terms of the sale, date, and price to be paid for trade-in were dictated by appellant and presented to appellee on a "take or leave it basis." Appellee acceded to appellant's request, and thereafter appellee completed the sale, and a plane was transferred to Newton out of appellant's stock, and thereafter appellee received a statement from appellant which designated appellee's compensation as a commission on this particular sale. The second sale was a prospect by the name of Christie, who was contacted by appellee, and during the first and second transactions appellee disclosed his prospect to appellant, and thereafter, appellant asked appellee to let it handle the transaction, and he acceded to this request, and the transaction was consummated on appellant's terms, which appellant knew were unsatisfactory to the appellee, and without appellee's knowledge. Appellee did not know of the terms of the sale until after it was made. In this transaction the old plane was taken in trade at appellant's price, and sold to appellee on a "take or leave it basis." Appellee was to get whatever he could for the old plane, and here again a commission was paid to appellee. The final transaction was the one with Prothro. Appellee and his agent contacted Prothro, and after negotiations with Prothro, appellant requested appellee to let it handle Prothro, which appellee agreed to do. With reference to this transaction Ritchey testified to the effect that Prothro was in Colorado in the summer of July, 1960, and while there he had an airplane accident in which his plane was damaged, and that when he found this out he called the appellant's office and talked with both Gray and Hubbard, his sales manager. It was Gray and Hubbard's idea to take a plane to Prothro, and they asked Ritchey if he would pay the expense of this trip, and he said he would; that the trip was not made because Prothro objected to them bringing a plane to him there. At a later date Gray contacted him and asked him if he would lay off of attempting to sell Prothro an airplane; that Gray and Hubbard said they were in a better position to close the deal than he. He testified that they said to him: "it was an old adage that too many cooks might spoil the broth." He further testified:

"Q. Was there any discussion at this time about the commission?

\*   \*   \*   \*   \*   \*

"A. Since I didn't own an airplane that the commission would be approximately ten percent of the sale price of the airplane.

\*   \*   \*   \*   \*   \*

"Q. \* \* \* what conversation did you have after this conversation with Mr. Hubbard and Mr. Gray?

"A. Mr. Hubbard paid a visit to my office after this conversation took place and instructed me not to make any further attempts to sell Mr. Prothro an airplane, and he was in my office a short while, a very short time; when he received a phone call from Dallas and he says,—he used this expression, 'My God, Mr. Prothro is over there ready to buy an airplane.' And with that he dashed down the steps and was gone.

* * * * * *

"Q. Did Mr. Hubbard at any time before the sale was consummated call you—?

"A. Oh yes. Yes.

"Q.—concerning the terms?

"A. He called me. Right at this time he called me up and asked me if I would leave it up to him to have complete authority to close the deal as they seen best fit; could he close it and use his own initiative in the transaction.

"Q. He was asking you?

"A. He asked if it was all right with me and I replied, 'Absolutely not.'

"Q. For what reason?

* * * * * *

"A. I asked him if there was going to be any other consideration, an oil well traded in or a cracked up airplane traded in for this. He said, no, it would be a straight retail sale. I asked him if there would be any discount and he said a straight retail sale and I said, 'Hubbard, I would be foolish to stand in your way if that is the transaction.' He assured me I would receive my commission on the retail trade, and there would be no other consideration taken."

Mr. Gray testified in part with reference to the Newton deal:

"Q. If he didn't take the deal at all you sold the plane and he didn't get anything?

"A. That is right."

With reference to the Prothro sale he testified in part:

"Q. * * * Now, on the Prothro transaction you say that your exact words were not to tell them to lay off of Prothro, is that correct?

"A. Yes, that is correct.

"Q. But even from your side of the story it had the same effect, the same general idea, to let you handle it instead of Mr. Ritchey on the balance of the negotiations?

"A. It was by mutual agreement. It was something we discussed as advisable, and it was decided by both of us that would be the way most likely to produce a sale.

"Q. You suggested that?

"A. I suggested it. Yes."

He further testified in part:

"Q. In connection with those further negotiations, and this is in the early part of September, Mr. Hubbard, I believe your sales manager, made a demonstration of a Queenair and a Bonanza to Mr. Prothro in Wichita Falls.

"A. Yes, sir.

* * * * * *

"Q. And Mr. Ritchey was billed for the expense of the demonstration?

"A. He was billed for the gasoline and oil, yes sir.

* * * * * *

"Q. That was after the time you asked him to back off and let us handle the negotiations?

"A. Yes sir."

We think the foregoing undisputed testimony brings this case under the rule:

"The consent of the parties to the rescission of a subsisting simple con-

tract may be implied from acts, conduct with reference to their dealings with the property and need not be shown by an express agreement."

See Lynch Davidson & Co. v. Denman Lumber Co., Tex.Civ.App., 270 S.W. 225, writ dis. See also Whaley Lumber Co. v. Reliance Brick Co., Tex.Civ.App., 2 S.W. 2d 911. In 17 C.J.S. Contracts § 388, p. 880, we find this statement of the Rule:

"The cancellation, abandonment, or rescission of a written contract may not only be written but it may also be oral or by implied agreement, which may be shown by the acts of the parties and the surrounding circumstances."

See also Bartlett v. Stanchfield, 148 Mass. 394, 19 N.E. 549, 2 L.R.A. 625, (Mass.Sup. Jud.Ct., 1889); St. Paul Fire & Marine Ins. Co. v. Pipkin, Tex.Civ.App., 207 S.W. 360, n. w. h.; O'Loughlin v. Poli, 82 Conn. 427, 74 A. 763, (Sup.Ct. of Err. of Conn., 1909). In Holmes v. Tyner, Tex.Civ.App., 179 S.W. 887, n. w. h., we find this statement of the Rule:

" * * * but it must be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case. If, from the facts and circumstances, it appears that there was at least an implied intention to create the relation, it will by implication be held to exist." See also Brinker v. First Nat'l. Bank, 37 S.W. 2d 136, (Tex.Com.App., 1931) Moore v. El Paso Chamber of Commerce, Tex. Civ.App., 220 S.W.2d 327; Dodson v. Dooley, Tex.Civ.App., 280 S.W.2d 758, n. r. e.; Tudor v. Thomas, Tex.Civ. App., 301 S.W.2d 733, n. r. e.

We think it is clear from the record that on the sales to Newton and Christie, appellee, as a result of appellant's course of action, acted as appellant's sales agent and received commissions therefor. Moreover, it is equally clear that the actions of the appellant in the Prothro transaction, were sufficient to create the agency relationship in appellee in the procuring of the purchaser and in the sale to the purchaser. Moreover, the trial court was the trier of the facts, and it was his duty to find the facts, and we think under the testimony here tendered that the trial court was certainly justified in finding that the original contract had been abandoned, and that there had been created an implied agency contract between the parties, and that under the testimony tendered the appellee had earned his commission under the implied agency agreement. It is without dispute that neither the sale to Newton nor to Christie were made and handled under the terms of the written contract, and it is without dispute that the appellant recognized this and paid Ritchey a commission on each of these sales. We think the testimony is ample to support the findings of the Trial Judge that the appellee was the procuring cause of the sale. See 3 C.J.S. Agency § 185, p. 86 and Keener v. Cleveland, 250 S.W. 151 (Tex.Com.App.). See also 17 Tex.Jur., 2d Damages, Sec. 197, and cases there cited, and Bond v. Hancock, Tex.Civ.App., 163 S.W. 660. Where the evidence is ample to support the finding of the Trial Court, the Court of Civil Appeals cannot substitute its findings for that of the Trial Court. See Wilson v. Teague Indep. School District, Tex.Civ.App., 251 S.W.2d 263, writ ref., Points 1 and 2. Also Consolidated Cas. Ins. Co. v. Baker, Tex.Civ. App., 297 S.W.2d 706, n. r. e., Pt. 5, p. 715. Being of the foregoing view, we think it was the duty of the trial court to enter the decree it did in view of its findings, and being of this view, each of the other points tendered raised by appellant pass out of the case; however, if we be mistaken in this view, they are expressly overruled.

The judgment of the trial court is affirmed.