GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY V.
V. F. ZANTZINGER ET AL.

No. 707. Decided December 22, 1898.

92 365
92 380

### 1. Certified Questions.

By "the very question to be decided," which is to be certified to the Supreme Court, is meant, not an abstract question which may determine the issue as presented in that court, but the issue itself, as there presented—the precise question ruled upon in the trial court, as shown by the record in the Court of Civil Appeals. (Pp. 369, 370.)

### 2. Trespasser—Willful Injury.

An engineer who, in order to drive off a trespasser riding upon the footboard of an engine, purposely caused steam and hot water to be thrown upon him from the cylinder cocks, was guilty of an intentional and not a negligent wrong. (P. 370.)

### 3. Same—Contributory Negligence.

Negligence of the plaintiff constitutes a defense when it concurs with that of defendant to produce the damage sued for; but it is not so if the act of the defendant be willful, though such contributory negligence cause damage to result which was not intended by the wrongdoer. (Pp. 370-372.)

### 4. Same.

An engineer purposely throwing steam and hot water upon a trespasser to cause him to get off the engine, the latter attempted to jump therefrom to a car attached to it, and in so doing fell and was run over. Held, that it was not error in submitting the question of the company's liability for damages from such injury as the result of the willful assault, to fail to submit the defense of contributory negligence. (Pp. 367-372.)

### 5. Same.

The act of the injured person which will prevent his recovery for damages thereby caused to result from defendant's willful wrong, must be with the intention of causing such result, or such willful omission of care to avoid it as is equivalent thereto, and not a mere want of ordinary care. (P. 372.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the First District, in an appeal from Wharton County.

*A. L. Jackson*, for appellant.—The act of the engineer in throwing out hot water and steam for the purpose of ejecting a trespasser from the engine, without intending thereby to cause such trespasser injury through falling and being run over by the train, is not to be deemed a willful tort in relation to such injury so as to relieve the trespasser of the consequences of his negligence, but only a negligent act concurring with the trespass as a proximate cause of such injury.

(a) "Negligence, constituting a cause of civil action, is such an omission by a responsible person to use that degree of care and diligence and skill which it was his legal duty to use for the protection of another person from injury as in the natural and continuous sequence causes unintended damage to the latter." 1 Shearm. & Redf. on Neg., 5 ed., secs. 3, 5, 9, 19; Whart. on Neg., sec. 11; 16 Am. and Eng. Enc. of Law, 389, 392.

(b) When a charge submits the issue whether the facts hypothesized constitute mere negligence, and fails to submit the issue whether the alleged wrong was willful, the issue of contributory negligence being

fairly raised by the evidence, the theory of willfulness can not be invoked to cure such charge of its error in excluding the issue of contributory negligence. 1 Shearm. & Redf. on Neg., secs. 7, 19.

(c) A trespasser on the footboard of a moving locomotive is guilty of negligence continuing and coexisting with each instant of his presence thereon, and such negligence is deemed to concur with any act of mere negligence on the defendant's part as a proximate cause of those injuries which would not have occurred but for his occupying such position. The fact that the negligent act of the company was subsequent to the inception of the trespass does not alter the result, because each instant of the trespasser's presence is a renewal and continuation of the negligence on his part. In order to neutralize his negligence, and authorize a recovery in spite thereof, there must be "some distinct act from which a willful purpose to injure appellant could be inferred." Railway v. Rodgers, 36 S. W. Rep., 243; Wilcox v. Railway, 33 S. W. Rep., 380; Railway v. Dawkins, 77 Texas, 230; Hutch. on Carr., sec. 661; Robertson v. Railway, 22 Barb., 91; Files v. Railway, 149 Mass., 204; Carter v. Railway, 98 Ind., 552.

2. Where there is evidence tending to refute the allegation that plaintiff was deprived of the ability to use his senses and rendered incapable of exercising ordinary care, through the negligence of the defendant, the issues should be submitted to the jury as questions of fact (1) whether the facts were adequate to produce the alleged state of mind; and (2) whether such state of mind in fact existed, and was the cause of his conduct resulting in injury. It is error for the judge to assume the existence of a state of mind which will dispense with the exercise of ordinary care under the circumstances.

(a) In order to relieve the injured party of the obligation to use ordinary care for his own protection, on the ground that he was inspired with such terror as to lose his presence of mind, the surrounding conditions must be reasonably adequate or calculated naturally to produce such mental state; and whether such adequate conditions existed is an issue for the jury.

(b) Negligence which will excuse another from using ordinary care must have caused the injured person "to be surrounded by such circumstances as to him appear to threaten destruction of his life or serious injury to his person," so that "in an effort to save his life he made a choice of the means from which injury resulted." Apprehension of slight pain or inconvenience will not justify the want of care. Whether or not such state of mind (1) actually existed, and (2) caused the rash conduct, are issues of fact for the jury. Railway v. Neff, 28 S. W. Rep., 286; Railway v. Rodgers, 36 S. W. Rep., 243; 1 Shearm. & Redf. on Neg., sec. 89; 2 Id., sec. 519.

(c) A party whose own negligence concurs in surrounding him with conditions inspiring terror and confusion of mind, referred to in the case of Railway v. Neff, can not recover for injuries resulting from his

rash conduct. Railway v. Watkins, 29 S. W. Rep., 233; Railway v. Neff, 28 S. W. Rep., 283; 1 Shearm. & Redf. on Neg., sec. 89.

*Baldwin & Meek, O. T. Holt,* and *J. H. Davenport,* for appellees.— When the original act is actually or by presumption of law willful, the guilty person, upon an old principle of common law, is held responsible for all the consequences of his wrongful act. 16 Am. and Eng. Enc. of Law, 393, and authorities cited in note 1; 4 Am. and Eng. Enc. of Law, 80, 81, and authorities in note 3, p. 81; also notes 3 and 4, p. 80; Carter v. Railway, 98 Ind., 552.

It seems to us that this (the second) question has been fully and ably answered by Justice Brown in the case of Railway v. Neff, 87 Texas, 303; the question is there given full and mature consideration. The authorities are discussed and the conclusion reached that under such circumstances the contributory negligence of the plaintiff can not be relied upon as a defense, and that a person so frightened should not be required to exercise ordinary care, for the reason that under the circumstances ordinary prudence could not be expected. Railway v. Watkins, 88 Texas, 20.

GAINES, Chief Justice.—The Court of Civil Apepals for the First Supreme Judicial District has certified for our decision the following questions:

"The plaintiffs, Mrs. E. S. Zantzinger, who is joined in this action by her husband, is the mother of Almer Campbell, a minor, and the suit is in her own behalf as well as in behalf of her son to recover damages for personal injuries sustained by him, as it is claimed, through the negligence of the appellant, who was defendant below.

"The evidence adduced at the trial showed that defendant had a train of cars attached to the front end of a switch engine, which was running backwards, pulling the cars after it, into the city of Houston from a neighboring station. The switch engine had no pilot or 'cowcatcher' in front of it, but attached at each end was a footboard extending across the track. The car nearest the engine was a flat car, several feet intervening between it and the footboard. While the train was slowly moving, Almer Campbell, without permission of anyone and contrary to the rules of the company, entered upon the footboard for the purpose of riding into Houston, and stood upon it between the engine and flat car. After he had ridden a short distance, the cylinder cock of the engine was opened by the engineer and hot water and steam were thereby thrown upon his legs and feet, whereupon he sprang from the footboard toward the flat car, intending to get upon the latter, but missed it and fell upon the track and was run over and injured. There is evidence tending to show that the cylinder cock was opened by the engineer for the purpose of throwing the steam and water upon the boy in order to make him get off the engine, but the evidence does not warrant the conclusion that the engineer intended more than this, or that he intended

to injure Campbell in the way in which he was injured. The engineer had authority to eject persons wrongfully riding upon the engine. There is also evidence tending to show that the fright and pain caused to Campbell by the steam and water also caused him to lose his presence of mind and to make the leap in order to escape. The steam and water caused pain and fright but did not injure the skin. He testified that he was facing the engineer with his back to the flat car, and that after the escape of steam and water commenced he turned and made the leap, calculating to reach the flat car with his feet but not his hands; that after he fell between the cars, he crawled forty or fifty feet in the direction in which the train was moving in order to avoid the brake beam under the flat car, and then attempted to get across the rail, and was caught. There is also evidence tending to show that the engineer saw Campbell fall between the cars, knew his danger, and could have stopped the train in time to have avoided the injury. This we do not regard as affecting the questions certified.

"The evidence is uncontradicted that, in getting upon the footboard, Campbell was a trespasser and was guilty of negligence, and the court below so instructed the jury. He was nearly 17 years of age, and understood the dangers and risks of the situation.

"The charge given below submitted only two grounds upon which the plaintiffs could recover, and carefully restricted the jury to them. The first is stated in the charge set out below, and the second submits the question of whether or not the engineer, after discovering Campbell's danger, used proper care to prevent the injury. As to the latter we deem it unnecessary to state more. The charge referred to is as follows:

" 'You are instructed that if you find from the evidence that, at the time and place stated in plaintiff's petition, Almer Campbell got upon the footboard or running-board attached to the engine then being operated on defendant's line of railway by its agents and servants, and that while the said Almer Campbell was standing upon said footboard, and while said engine and train of cars were in motion, the defendant's engineer in charge of said engine, by means of the cylinder cocks attached to said engine, caused hot water or steam to be thrown upon said Almer Campbell's person, for the purpose of frightening or scaring him off the engine, and that the opening of the cylinder cocks for the purpose of letting out the hot water or steam was done for the purpose of throwing the water upon the said Almer Campbell, and not in the operation of the engine, and you further find that to eject Almer Campbell from his position on the footboard of the engine was within the scope of the duty of said engineer in operating the engine, and that he had implied authority to do so, and that said act on his part of throwing the water or steam on Almer Campbell was negligence, as herein defined; and if you further find that the hot water or steam so thrown on said Almer Campbell so frightened him or caused him such pain that in order to escape therefrom he made an attempt to jump upon

the flat car in front of the engine, and fell upon the track where the wheels of said car passed over his leg, injuring substantially as set out in the petition; and you further believe that the said act of the engineer in turning the hot water or steam upon the said Almer Campbell was negligence, as hereinafter defined, and was the proximate cause of the said accident, you will find for the plaintiffs.'

"The questions certified are as follows:

"First.—Should the act of the engineer in throwing out the steam and water for the purpose of ejecting Campbell from the engine be deemed willful in its relation to the result which actually followed, but was not intended, so that the negligence of Campbell in placing himself in such a position, without which he would not have received his injury, can not be considered contributory negligence; or should such act of the engineer be regarded as only a negligent cause of such injuries with which the negligence of Campbell may be considered as contributing to the result?

"Second.—Should the court, in applying to the facts of this case as above stated the rule announced in Railway v. Neff, 87 Texas, 303, have assumed that Campbell's act in making the leap described was not contributory negligence, and that he was excused by the act of the engineer and other facts of the situation from the exercise of ordinary prudence; or should it have submitted to the jury the question of the adequacy of such facts to produce a state of mind in which ordinary prudence should not be expected of him, and the further question whether or not such state of mind was produced?"

The statute which authorizes a Court of Civil Appeals to refer an issue in law to this court for determination makes it the duty of the Chief Justice of that court "to certify the very question to be decided." Rev. Stats., art. 1043. By "the very question" we do not understand is meant an abstract question which may determine the issue as presented in that court, but the issue itself as there presented. For example, if it be the correctness of the ruling of the court in sustaining or overruling an exception to a pleading, the substance, at least, of the pleading and of the exception ought to be set out in the statement and not merely an abstract question submitted, which may, in the opinion of that court, determine the point. Such, as we think, is the rule also as to the giving or refusal of instructions, the admission or exclusion of evidence, and in general to all the issues of law which may be presented upon the appeal. It is the precise question ruled upon in the trial court as shown by the record in the Court of Civil Appeals which that court is authorized to certify, and which we have jurisdiction to determine.

In the certificate before us, a portion of the charge of the court is set forth and the questions certified seem to bear upon the correctness of the instruction quoted. It resolves itself, as it seems to us, into a question whether or not the charge be correct in the particlars indi-

cated by the inquiry. We infer from the statement accompanying the questions that the action of the minor son to recover damages for his injuries and that of his mother to recover for the loss resulting to her from the same cause were prosecuted together in one proceeding without objection. We have had some doubt whether we ought to answer the second question; and we are now of opinion that, if we had the case of the son only, that question would be abstract and should not be determined. So far as he is concerned, upon the hypothesis stated in the instruction, he was entitled to recover at least for the assault made upon him, without reference to the injuries which subsequently resulted, and therefore as to him the charge was correct. The jury were not told that he had a right to recover for the injury to his leg. If such instruction was elsewhere given, the Court of Civil Appeals has not so stated. Therefore, it seems to us that the question of his right to recover for the loss of his leg, in the event that his action succeeding the assault upon him was negligent, does not arise out of the very question before the Court of Civil Appeals.

But the case of the mother is different. It is apparent from the statement of the case that no injury resulted to her simply from the throwing of the hot water upon her son. If it had stopped there, no loss would have resulted to her. Her right of action, if it exists at all, results from the injury to his leg and the consequent expenses and loss of service. Therefore, unless upon the facts hypothetically stated in the instruction of the court she was entitled to recover the damages resulting to her from that injury, the charge is not correct as a whole. The charge makes no distinction as to the respective rights of the mother and the son, but instructs the jury, if they find the facts as stated, to find "for the plaintiffs." We conclude that, in this aspect of the case, the question of the correctness of the charge presents both points upon which it seems the Court of Civil Appeals desired to elicit our opinion, and we therefore proceed to answer the questions.

1. If the servants of the appellant company purposely threw the hot water upon Campbell, it was an intentional and not a negligent wrong. The fact that he was a trespasser upon the train did not justify the engineer's conduct. The latter had the right to remove him, and for that purpose to put his hands upon him, and to use such force as was necessary to accomplish that end. But the means adopted resulted in an assault. We answer the first question in its first form in the affirmative, and in its second form in the negative.

2. The second question presents a novel and difficult point, and one upon which we have found no direct authority. It must be resolved upon principle. When the negligence of the plaintiff concurs with that of the defendant and contributes to produce the damage for which he sues, he can not recover. It is not so if the act of the defendant be willful. In speaking of the rule of contributory negligence, the Supreme Court of Indiana says: "The doctrine, however, can have no application to the case of an intentional and unlawful assault and bat-

tery, for the reason that the person thus assaulted is under no obligation to exercise any care to avoid the same by retreating or otherwise, and for the further reason that his want of care can in no just sense be said to contribute to the injury inflicted upon him by such assault and battery." Steinmetz v. Kelly, 72 Ind., 442. See also Ruter v. Foy, 46 Iowa, 132; Brownell v. Flagler, 5 Hill, 282.

The principles announced apply to the question of the original right of action. The question under consideration, however, involves rather an inquiry as to the duty of a party who has been injured by the fault of another to use reasonable precautions to avoid the consequences of his injury. 1 Sedg. on Dam., sec. 202. In negligence cases such duty is usually regarded as a part of the law of contributory negligence. The rule is that if a plaintiff who has been injured by the negligent conduct of the defendant fails to exercise reasonable care to avoid the consequences of his injury, he can not recover for so much of his damage as results from that failure. But does this rule apply to the case of a willful injury? We are of the opinion that it does not. Since one who has committed an assault and battery upon another can not urge in his defense that the plaintiff might, by the use of due care, have avoided the battery, we think where the injury is intentional he should not be permitted to say in reduction of the damages that the plaintiff might have prevented them at least in part by careful conduct on his part. If negligence contributing to the injury can not be set up to defeat the action when the act of the defendant was willful, by a parity of reasoning, the defendant in such a case should not be permitted to say that, but for the negligence of the defendant in failing to avoid the consequences of the wrong, he would have suffered no damage, or only a part of the damages for which he claims a recovery.

We apprehend that a plaintiff can not make a case by intentionally contributing to the injury which the defendant willfully intends to inflict upon him. For example, should one intentionally hurl a missile at another with the intent to injure, and should the other voluntarily place himself in its way and thereby receive a battery which he would otherwise have escaped, the person so struck could not recover. So, when he has been intentionally injured, he should not be permitted to recover damages which have resulted from his willful omission to take reasonable precautions to avoid the consequences of the wrong. Since a negligent act of the plaintiff contributing to a result brought about by the concurring negligent act of the defendant exonerates the defendant from the consequences of his wrong,—pro tanto at least,—so a willful act of the plaintiff should have a like effect in case of an intentional injury. Loker v. Damon, 17 Pick., 284. In the case cited, Chief Justice Shaw says "In assessing damages, the direct and immediate consequences of the injurious act are to be regarded, and not remote, speculative, and contingent consequences, which the party injured might easily have avoided by his own act. Suppose a man should enter his neighbor's field unlawfully and leave the gate open; if, before the owner knows it, cattle en-

ter and destroy the crop, the trespasser is responsible. But if the owner sees the gate open and passes it frequently, and willfully and obstinately or through gross negligence leaves it open all summer, and cattle get in, it is his own folly. So if one throw a stone and break a window, the cost of repairing the window is the ordinary measure of damage. But if the owner suffers the window to remain without repairing a great length of time after notice of the fact, and his furniture, or pictures, or other valuable articles, sustain damage, or the rain beats in and rots the window, the damage would be too remote. We think the jury were rightly instructed, that as the trespass consisted in removing a few rods of fence, the proper measure of damage was the costs of repairing it, and not the loss of a subsequent year's crop, arising from the want of such fence. I do not mean to say that other damages may not be given for injury in breaking the plaintiff's close, but I mean only to say that in the actual circumstances of this case, the cost of replacing the fence, and not the loss of an ensuing year's crop, is to be taken as the rule of damages for that part of the injury which consisted in removing the fence and leaving the close exposed." Where, in the case of an intentional tort, the plaintiff has purposely omitted to take reasonable steps to prevent an aggravation of his damages or has been so grossly negligent in that regard as to be deemed guilty of a willful omission on his part, he ought not to recover for the damages which might have been prevented by proper care; but, on the other hand, we think that he should recover his full damages where he has been guilty of ordinary negligence only. A party can not voluntarily inflict an injury upon another and then claim that the party injured owes him the duty to exercise ordinary care to protect him from the consequences of his act.

We answer the second question by saying that in our opinion the trial court did not err in failing to submit the question of Campbell's contributory negligence in the charge set out in the statement.