**CITY OF DALLAS v. BROWN.**

No. 13,000.

Court of Civil Appeals of Texas. Dallas.

March 15, 1941.

Rehearing Denied April 12, 1941.

H. P. Kucera, A. J. Thuss, and C. E. Long, Jr., all of Dallas, for appellant.

John G. Wilson, of Dallas, for appellee.

YOUNG, Justice.

Appellee recovered damages in the sum of $204.31 for alleged unwarranted discontinuance of water service at her home, 3838 Colonial Avenue, Dallas; and from such judgment, following a jury verdict, appeal is taken. Plaintiff's action below was in tort, arising from breach of contract; and antecedent facts bearing on the present controversy are these: In 1929, W. J. Brown and appellee, Rhoda C. Brown, were husband and wife, living in above house-numbered premises. Residing with them were their son-in-law and daughter, Mr. and Mrs. O. G. Hancock, paying to Mrs. Brown, as was testified, monthly sums for room and board. During the year just mentioned, Mrs. Hancock went to the proper department of the City to arrange for water service. The required form was filled out, showing W. J. Brown as the consumer, and signed "W. J. Brown (Applicant) Mrs. O. G. Hancock." Water was thereupon duly furnished to the address and regularly paid for until the year 1937; but, previous to such time, and in January, 1934, Mr. Brown, the original applicant, had died. In 1931, O. G. Hancock applied for and was issued water permit at 4124 Colonial, where he was conducting a business; continuing as a consumer of water at said location until 1936, when he requested the City to disconnect the service and send final bill to 3838 Colonial Avenue. A dispute arose over the amount of this bill and it was not paid by Mr. Hancock. After several conversations between this party and officials of the water department, the latter reduced the bill to $4.31, which, for a year or more, the City made repeated efforts to collect. In October, 1937, appellant determined from the signature of Mrs. Hancock to the original 1929 application, and from their residence at 3838 Colonial, that the Hancocks were joint users of water at this address; and, under an applicable ordinance, transferred the delinquent bill to 3838 Colonial. The subsequent water bill to Mrs. Brown included the $4.31 just mentioned, which she refused to pay, and in December, 1937, her service was discontinued. Connection was restored in March, 1938, by Mrs. Brown's making a new application and paying the Hancock old indebtedness, among other charges made by the municipality. The instant suit was for damages sustained by plaintiff; her labor, expense, and inconvenience in procuring water from another source during the interval, as well as for mental distress and humiliation. The jury found, in substance, (1) that O. G. Hancock was not

a joint user of water with plaintiff on the material dates; (2) that prior to the City's disconnection order, plaintiff had tendered the full amount of indebtedness owing for water service at 3838 Colonial; (3) that in March, 1938, when plaintiff made a new contract for water, she was required to pay the Hancock disputed bill of $4.31, which was an over-payment by her; (4) that $100 would reasonably compensate the plaintiff for carrying water from a neighbor's house while her service was discontinued; and (5) that she suffered $100 in humiliation and mental distress while being deprived of city water during the same period.

We overrule the contention that no privity of contract existed whereby plaintiff could maintain a suit under the application of W. J. Brown in 1929. At the inception of the arrangement for water, Mr. Brown, the husband, was presumably acting as community agent in securing a "necessity" for the marital partnership. It can further be presumed that bills for the service were paid out of joint funds, and, in law, their community property was liable for such expense. Arts. 4620-21. As the term "privity" denotes mutual or successive relationship to the same rights of property, 33 Words and Phrases, Perm.Ed., p. 798, et seq., we think Mrs. Brown was entitled to share the benefits of the aforesaid contract, as well as the burdens thereof, she being at least a party to the consideration. Appellant was on notice of the original applicant's death in 1934, and that the initial contract thereby terminated as to him. It seems to us, the City, after acquiescing in the payment by plaintiff of water bills, in money and checks, for ensuing years, would be estopped to claim that she had no beneficial interest in the prior agreement. Moreover, "Where a municipality furnishes water and the consumer pays for it, without written agreement, for a period of years, a contract is implied which, on the part of the municipality, imposes the obligation of continuing the service." 67 C.J., Waters, Sec. 745, p. 1224.

However, at any time following the death of Mr. Brown, the City could have conditioned further water service to plaintiff upon her signing a new application, as was done in March, 1938; City Ordinance 2484.

Propositions 6 and 7 argue that compensation for humiliation and mental distress is not properly recoverable in an action ex contractu. The general rule that mental suffering is not allowable as an element of damage for breach of contract is qualified in 13 T.J., Damages, p. 233, Sec. 127, as follows: " * * * before a recovery can be had, it must be shown that the mental perturbation of the plaintiff was more than ordinary regret or annoyance, and what is commonly denominated 'mental anguish'; and the anguish or distress of mind must be shown to have been such a necessary and natural result of the breach of contract as that the party breaching it will be held to have contemplated such mental suffering. Subject to these conditions, a recovery is sustainable. * * *" Bearing in mind that the act of the municipality, under the instant facts, was clearly wrongful, we are inclined to hold the issue as proper, because, first, it was additional to a finding of actual damages (issue 5); and second, the very nature of the case raised the issue as an item naturally resulting, and necessarily within the contemplation of the party at fault. Freeman v. Clark, 107 Tex. 298, 177 S.W. 1189.

The City pleaded as a defense that plaintiff in no way sought to minimize or reduce her damage, whereas, it was easily within her power to do so; and issues predicated thereon were refused by the court. They read: (2) "Do you find and believe from a preponderance of the evidence that it was possible for the plaintiff to reduce her damages, if any. Answer 'Yes' or 'No'." (3) "Do you find and believe from a preponderance of the evidence that the plaintiff attempted to reduce the damages, if any, which she claims. Answer 'Yes' or 'No'." (4) "Do you find and believe from a preponderance of the evidence that the plaintiff, Mrs. Rhoda C. Brown, did everything possible to reduce the damages, if any, which she claims. Answer 'Yes' or 'No'."

While not approving the form of these questions which the trial court refused to submit, it is the opinion of the majority that appropriate issues on plaintiff's duty to minimize her said damages are raised by the evidence; i. e., of whether Mrs. Brown exercised ordinary care to lessen the amount and extent of the damage allegedly sustained by her. The majority, therefore, considers that the lower court erred in not including issues to the above effect in the charge, upon the following

grounds: That plaintiff's action accrued immediately upon the City's severance of the water connection; and, even conceding such action to be wrongful, a jury question was presented, whether plaintiff should not earlier have tendered the excess demanded, thereby limiting her recovery to the overcharge, plus provable damages to the time when water could again have been supplied, Holly v. City of Neodesha, 88 Kan. 102, 127 P. 616; the familiar law principle being applied that "Where a party is entitled to the benefits of a contract and can save himself from damages resulting from its breach at a trifling expense or with reasonable exertions, it is his duty to incur such expense and make such exertions * * *." Walker v. Salt Flat Water Co., 128 Tex. 140, 96 S.W.2d 231, 232. For the court's failure to submit defendant's issues Nos. 2, 3 and 4, this cause is reversed and remanded for another trial.

Reversed and remanded.

YOUNG, Justice (dissenting).

I do not agree to a reversal of this cause, and believe it should be affirmed; that is to say, the trial court did not err in refusing above defensive issues, because the doctrine of mitigation of damages is nowise applicable to the facts and circumstances of plaintiff's cause of action. If, prior to said breach, plaintiff's dealings with defendant were not based upon an express novated contract, then certainly such agreement to furnish water was implied, terminable only on failure to pay current bills. (Of course, defendant could at any time have required plaintiff to conform to the existing regulations relative to a written application for water.) It appears indisputably from the record, and the jury so found, that defendant discontinued its service upon plaintiff's refusal to pay the $4.31 bill owing by another person and wholly incurred at another address; a bill long delinquent when added to plaintiff's current bill, and one that defendant could not even reasonably contend was hers. Had the argument been confined to plaintiff's own water bill—which it was not—the decisions are general that neither a water company nor a municipality can arbitrarily shut off a consumer's supply, pending dispute in good faith over correctness of the charge. "Thus, it has been held that where a water company discontinues its service for nonpayment of a disputed amount or liability, it does so at its peril, and, if in the wrong, is liable to compensatory damages in any event, and, where the circumstances justify it, to punitive damages also." Annotation to Sims v. Alabama Water Co., 205 Ala. 378, 87 So. 688, 28 A.L.R. 461, at page 475.

A city, when operating a water works in its proprietary capacity, owes a duty to patrons not basically different from that of a like corporation, privately owned. In Southwestern Gas & Electric Co. v. Stanley, Tex.Civ.App., 45 S.W.2d 671, 674, affirmed by Supreme Court, 123 Tex. 157, 70 S.W.2d 413, plaintiff recovered damages, both actual and exemplary, for a wrongful discontinuance of lights to his residence, following a disputed account for light service to his garage. The trial court refused defendant's requested instruction as to whether plaintiff should have minimized his damage by payment. In an affirmance, the Texarkana Court said: "In no wise had the appellee failed or defaulted in the performance of his agreement to timely pay the monthly charges for electricity for his residence. And in no wise had the appellant company's right to have timely payment of the electric bill for the residence been violated. In such circumstances the appellant company could not be regarded as in a position to claim that the appellee by not promptly paying the garage bill for electricity had violated and become delinquent in performance of the contract as respects the residence, consequently the nonpayment of the garage bill would not legally justify cutting out the electricity for the residence. Texas Central Power Co. v. Perez (Tex.Civ.App.) 291 S.W. 622. Manifestly one party cannot compel the other affirmatively to do something which the contract does not require of him. It follows that the appellee, having a right to insist on full performance of the contract according to its terms as respects his residence, *owed the appellant company no duty and the appellant company could not require him to pay the garage bill as a means to prevent the damages occasioned without his fault in cutting off the electricity from his residence.* To so require the appellee to do would, in effect, be forcing him to abandon his legal right and waive damages that may arise from the breach of contract or tort and be converting his right into a coercive way of merely paying

debts entirely apart from the particular contract." (Italics supplied.) Citing Galveston, H. & S. A. Ry. Co. v. Zantzinger, 92 Tex. 365, 48 S.W. 563, 44 L.R.A. 553, 71 Am.St.Rep. 859.

It is my judgment that the same general principle is controlling of the present facts; and, so believing, I conclude no reversible error appears from a refusal of the issues under discussion.