**MOORE v. EL PASO CHAMBER OF COMMERCE.**

No. 4619.

Court of Civil Appeals of Texas. El Paso.
Feb. 9, 1949.

Rehearing Denied March 9, 1949.

Ernest Guinn, of El Paso, for appellant.

Kemp, Smith, Brown, Goggin & White, of El Paso, for appellee.

SUTTON, Justice.

This appeal is from the 65th District Court of El Paso County.

The suit was brought by the appellant, Jeanette Moore, against the appellee, El Paso Chamber of Commerce, and another defendant that went out of the case on an instructed verdict and is not here concerned, to recover damages for a personal injury. The trial on facts was to a jury and judgment rendered by the Court on the verdict for the Chamber of Commerce, and from that judgment this appeal is prosecuted. The suit in its origin is in some respects unusual and altogether unfortunate. The issues are few and the solution is thought not difficult in its legal aspects.

The Chamber of Commerce in 1946, and prior years, concerned itself with the very laudable and worthwhile undertaking of sponsoring a Southwestern Livestock Show and Exposition, incident to which was the

encouragement of young people in the production, feeding and exhibition of fine livestock, one of the principal and sustaining industries of the area. As a part of this project and to supply entertainment and advertise the Show from March 25 to March 31, 1946, the Chamber of Commerce sponsored a rodeo, and invited and encouraged the residents to go "Western" during that week by wearing some sort of distinguishing dress or regalia. In connection with the rodeo there were maintained in the downtown district one or more "corrals". A citizen was placed in charge of the corrals who was from time to time relieved by another. One of such corrals was located in Pioneer Plaza very near the Hilton Hotel in the busy down town section of the City of El Paso. There was located in this corral a "hot-seat" a chair wired with hot wires. There were numerous attendants in and about the corral. There were supplied and used in connection with the corrals, wagons. These wagons, two or more in number, moved over the streets through the city accompanied by men, usually younger men, supplied with "lassos" or ropes. People on the streets who were not attired in some sort of western regalia were roped and lifted into wagons and conveyed to the corrals and there "corraled" and many of them invited or caused to occupy the hot seat, wherein they were lightly "shocked". There were also men engaged about the corrals who apprehended people passing on the streets in the vicinity of the corrals and likewise subjected to the "horseplay" of the corrals, and were released when they purchased rodeo tickets or handkerchiefs, which handkerchiefs when worn about the neck satisfied the attire requirements.

On March 27, 1946, during the rodeo week, plaintiff and her mother had been down town shopping. Between 1:30 and 2 P.M. they were walking west along Mills Street in the direction of the corral on Pioneer Plaza and were about in front of the Hilton Drug Store, located in the Hilton Hotel. They were approached by three young ropers, who, plaintiff said had their eyes on her, and about forty feet away. One of them said: "let's get that girl," or "let's get that one", or something to that effect. Plaintiff was a young woman just past seventeen and married for some two months. The young woman said to her mother "Let's duck in here", and ran into the drug store. One of the young men with his rope followed her. She said she was frightened and not interested in the play and sought to escape from the drug store into the lobby of the Hilton where she thought she would be safe from the apprehension. To do so she had to pass through a door connecting the drug store and the lobby. The door had a glass panel. She ran against the door and pushed her left hand through the glass and received very severe cuts and residual serious injuries to her hand, wrist and fingers and thumb. There is no question about the injury and its seriousness.

Plaintiff in her suit pleaded the situation here outlined in considerable detail and charged the Chamber of Commerce, acting through its agents, servants and representatives, with the responsibility and liability for the injuries received. She pleaded an invasion of her right to the lawful use of the public streets of the city without interference. She charged the defendant with negligence, carelessness, recklessness and wilful conduct, and that the defendant, its agents, servants and employees negligently, carelessly, recklessly and wilfully, in violation of the laws of the State, assaulted plaintiff by chasing her for the purpose of roping her and imprisoning her without her consent, and in violation of law sought to restrain plaintiff without her consent, and that all such was the proximate cause of her injury and damage.

The defendant answered with a general denial and specially that it was not responsible for plaintiff's injury and damage, and that the person or persons who were responsible were not agents, servants or employees of it and it had no control over them. The defendant further pleaded seven separate grounds of contributory negligence.

The case was submitted on twenty-four special issues. The jury, in response to the issues, found plaintiff was pursued by Claude Weaver, the young man who went into the drug store after plaintiff, and

caused to push the glass in the door between the drugstore and the Hilton lobby and to be injured thereby; that Weaver was acting under instructions given him by one "Shorty"; that "Shorty was acting within the actual or implied scope of his authority from the Chamber of Commerce; that Weaver was guilty of negligence; that such negligence was the proximate cause of the injury, and that the plaintiff did not invite or provoke the pursuit. The jury further found that plaintiff was guilty of negligence in pushing the glass of the door; that she was negligent in failing to keep a proper lookout for her own safety; that she was negligent in running into the drug store, and that all such acts of negligence were a proximate cause of the injury. The jury found plaintiff had been damaged in the sum of $6163.

At the conclusion of the testimony the defendant, Chamber of Commerce, moved for an instructed verdict, and after the return of the verdict moved for a judgment on the verdict. The plaintiff likewise moved for judgment on the verdict. Defendant's motion was granted and judgment entered in its favor and that plaintiff take nothing.

Plaintiff filed a motion to set aside the judgment and for a new trial. These were overruled and notice of appeal given, as was also given in the judgment.

Plaintiff assigns but one error, based on her motions and the actions taken by the court, that is, that the court erred in rendering judgment on the verdict for the defendant below instead of for the plaintiff.

■ Apparently the trial court considered contributory negligence a defense in this case and that the findings of the jury on the issues of contributory negligence defeated her right to recover on the verdict otherwise favorable to her. In our opinion this is not a negligence case. All that young Weaver did he willed or purposed to do, save to become responsible for the serious injury inflicted as a consequence of what he did that led to it. He intended to do exactly what he did do, except the infliction of the injury. What he did then

was an intentional and not a negligent wrong. Galveston H. & S. A. Ry. Co. v. Zantzinger, 92 Tex. 365, 48 S.W. 563, 44 L.R.A. 553, 17 Am.St.Rep. 859. This leading case, authored by a very distinguished and great judge, is likewise authority for the propositions it is not essential that injury be intended, and that contributory negligence is no defense to an intentional wrong. Since the decision in the case just cited it has been many times asserted by the Supreme Court that contributory neligence is never a defense to an intentional wrong. Morgan Bros. v. M. K. & T. Ry. Co., 108 Tex. 331, 193 S.W. 134(2); Wilson v. Southern Traction Co., 111 Tex. 361, 234 S.W. 663 at page 665; Sugarland Industries v. Daily, 135 Tex. 532, 143 S.W. 2d 931. The rule is to be found in all the texts and books of general reference. We conclude, therefore, the findings of contributory negligence do not defeat the right of recovery.

The Chamber of Commerce takes the position the judgment is maintainable on the grounds plaintiff requested no special issues and made no objections and exceptions to the charge of the court and, therefore acquiesced in the manner of submission; that she requested no issues on assault, intentional misconduct or wilful misconduct; nor any issue as to the use of a dangerous instrumentality, or whether she was placed in imminent peril, and thereby waived such issues and acquiesced in the submission of the case on the theory of negligence, and that the favorable findings of the jury on contributory negligence justify the judgment. The Chamber of Commerce also has cross-assignments based upon the refusal of the Court to instruct a verdict in its favor upon the theory there was either no evidence or that the evidence was insufficient to authorize or sustain the issues touching the matters of agency.

■ The argument is plaintiff predicated her case on one or both of the theories of negligence or assault. The issue of assault is presented and argued on the basis of a penal assault, one committed with the wrongful and malicious intent to injure. That sort of an asault is not involved in the case.

■ The facts in the case, if not altogether, are virtually without dispute insofar as they affect the controlling issues of the case. It is not denied, and cannot well be, that plaintiff had the legal right to make a lawful use of the streets of the city without hindrance, interference and molestation, and that that right was violated by young Weaver in his pursuit or chase of her in an effort to restrain her and compel her submission to the "horse-play" of the day and that in doing so he caused her "to push the glass in the door between the Hilton Hotel Drug Store and the lobby in the Hilton Hotel and to be injured thereby." As pointed out earlier herein, the first issue inquired of the jury if Claude Weaver pursued plaintiff and caused her to push the glass and to be injured thereby as just quoted. There was no objection to this issue and the jury answered in the affirmative. That plaintiff was injured seriously and damaged is without dispute and the jury found the amount of the damage. It is thought there was nothing more essential to be found by the jury. The matter of agency, on the facts in the record, becomes largely a question of law. The jury, however, from the facts and circumstances in the case returned favorable findings for plaintiff on the issues of agency.

■ ■ The undisputed facts are the corrals were built and set up by the Livestock Committee of the Chamber of Commerce as a part of the Rodeo and Livestock Show. On March 19, 1946, there was staged at the Pioneer Plaza Corral a "kick-off" breakfast and supper attended by a large number of invited guests from various service clubs and others. On the occasion of the breakfast rodeo tickets were distributed and a ticket sale drive was staged for the day in a competitive sort of way. That evening at the supper reports were made and the tickets were accounted for to the Chamber of Commerce; the proceeds of the sales and commitments were turned in and unsold tickets accounted for and "the thing squared off." The corrals were operated throughout the week of March 25, 1946, in the manner heretofore indicated and the rodeo and Stock Show advertised and boosted through the activities around and in connection with the corrals. Some member of the Livestock Committee was in charge of the Pioneer Plaza all the time. One relieved another from time to time. In the language of Mr. George Wood, a member of the Committee who built Pioneer Plaza corral, "It was the boys who could get off and come down." Mr. Chris P. Fox, the Executive Vice President and General Manager of the Chamber of Commerce and who actively supervised its activities testified: "It (the corral) just runs itself * * * just one good fellow after another would just go ahead and take a hand at it."

Claude Weaver testified the morning before the accident he went down to the Pioneer Plaza corral and applied to a man there everyone about called "Shorty" for a job. "Shorty" gave him a rope (there were ropes all around there) and told him to go out with the wagons and rope and load people in the wagons who wore no Western regalia and bring them in to the corral. "Shorty" was described as a short, heavy man about 45 to 50 and dressed in complete frontier clothes. He was there all the time giving instructions to the boys who used the ropes and did the things to be done about the corral. He told them if anyone got mad bring them in anyway; that it was all in fun anyway. They had just unloaded a wagon and had started down Mills Street when the plaintiff in this case was discovered. Weaver then related how she ran into the drug store and how he followed with his rope with the purpose to rope her and how she undertook the escape through the door and was injured.

It is clear to us the Chamber of Commerce must be liable for the acts of Claude Weaver. The corrals were set up and maintained by the Chamber of Commerce through its Livestock Committee in the interest of and as a part of the rodeo and Livestock Show. It is true the Chamber of Commerce employed no one in the sense people were engaged for hire to do the things that were done in the operation of the corrals but "one good fellow after another would just go ahead and take a hand at it." Their services to that extent were voluntary and gratuitous, but nevertheless all they did was for and in the interest of

the Chamber of Commerce in furthering its projects. What Claude Weaver did was the chief activity of the corrals—the matter of going out and bringing in the people. The Chamber of Commerce had a representative in charge all the time and Weaver worked there, using the rope and bringing in people along with the others for more than a day and a half. The Chamber of Commerce may not permit him to openly engage in those activities peculiarly their own until an unfortunate accident and injury happens and then say he was not acting for them but that he was a mere volunteer and acting for himself. The facts clearly show he did nothing for himself, except to earn a couple of rodeo tickets for the services he rendered for the corral. The corral was not his. He had nothing to do with the installation of it.

"The relation of agency does not depend upon an express appointment and acceptance thereof, but it may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case. It may be implied from a single transaction. * * * It is often difficult to determine upon general principles whether any agency exists; rather it must be determined from the facts and circumstances of the particular case, and if it appears from such facts and circumstances that there was at least an implied intention to create the relation, it will by implication be held to exist." 2 C.J. 435–436, § 32, see also 2 C.J.S., Agency, § 23; Holmes v. Tyner, Tex.Civ.App., 179 S.W. 887 at page 891(2–6); Brinker v. Bank, Tex.Com.App., 37 S.W.2d 136, at page 140(14–15).

Again: "In many instances, agency arises not from the use of express language nor from the existence of a well defined relation, but from the general conduct of the parties. This relation may exist whether the parties so understand it or not. Agency may be established by circumstances, such as the relation of the parties and their conduct with reference to the subject matter involved. It is within the province of the court to determine whether under an ascertained state of facts an agency exists, but it is for the jury to determine the existence of facts sufficient to constitute the agency." Reed v. Hester, Tex.

Com.App., 44 S.W.2d 1107, at page 1109 (7–8); Daugherty v. Wiles, Tex.Com.App., 207 S.W. 900, at page 901(3–4).

It is difficult to find, we think, stronger facts than the facts of the instant case from which agency may be implied and held to exist.

It is our conclusion, therefore, the trial court was in error in rendering judgment on the verdict in favor of the Chamber of Commerce, but on the contrary on the undisputed facts and the findings of the jury the judgment should have been for the plaintiff in the amount of damages found by the jury. The judgment of the trial court will be accordingly reversed and judgment here rendered for the plaintiff for her damages and costs.

PRICE, C. J., did not participate.