Lewis DODSON, Appellant,

v.

J. B. DOOLEY, Appellee.

No. 6506.

Court of Civil Appeals of Texas.

Amarillo.

June 6, 1955.

Rehearing Denied June 27, 1955.

Alton M. Reeder, Amarillo, for appellant.

Stone & Stone, Amarillo, for appellee.

NORTHCUTT, Justice.

This is a suit for mandatory injunction brought by appellee, J. B. Dooley, against appellant, Lewis Dodson, to compel appellant to refrain from proceeding any further with completing his garage building and

that appellant be compelled to remove said garage and structure from its present location and to locate same within the limits of the out-building line established by the restrictions and plot of Wolflin Estates or, in the alternative only, that same shall conform to the zoning ordinances of the City of Amarillo and be located at least 40 feet back of the front line of the residence and that appellant be compelled to remove that part of the connecting structure between the house and the garage building as being in violation of the zoning ordinances of the City of Amarillo. Upon final hearing, the trial court in its judgment entered the following order:

"It is, terefore, ordered, adjudged and decreed that the defendant, Lewis Dodson, be and he is permanently enjoined from doing any further acts toward the completion or maintenance of such garage building where same now stands and from joining the connecting walk, roof and wall to such garage building, and that the defendant Lewis Dodson, be and he is hereby ordered and commanded to forthwith move and keep said garage in all of its parts, including the foundation thereof, entirely off all that part of his said Lots Nos. 11 and 12 in Block No. 31 of said Wolflin Estates lying between the west property line and the outbuilding limit line of such lots, which outbuilding limit line is 110 feet east of and parallel to the west property line of said lots as shown more fully by the Dedication of such Wolflin Estates."

From this judgment, appellant has presented this appeal.

Appellant presents together his first, third and fourth assignments of error complaining of the trial court's conclusions of law Nos. 2, 4 and 5 where the court held that the garage was a covered structure not directly attached to the residence; that a garage not directly attached could not be lawfully located upon appellant's property except on or back of the outbuilding limit line, which would be 110 feet east of the west property line, and that the appellee was entitled to a judgment enjoining the appellant from constructing upon his property any garage not directly attached to the house except on or behind the outbuilding limit line applicable thereto, and requiring the defendant to remove the garage from its present unlawful location.

It is to be noticed that the appellee's basis for relief herein as pleaded by him was under his theory that the garage in question was an outbuilding as defined by the dedication and that the over-all width or length of the building extending North and South occupied more than 80% of the width of the plot measured at the front building limit line. Appellee also contended that the garage was an accessory building as defined by the city ordinances and had to be located not less than 40 feet back of the front building line for the main building. But, appellee nowhere in his brief discusses Clause 28 of the ordinance defining "main building".

The dedication defines an outbuilding as meaning a covered structure not directly attached to the residence which it serves. The dedication does not define what constitutes a "main building" but the city ordinance in question defines "Main Building" as "The principal building or structure on a lot including all attachments thereto which are connected to it". The ordinance also describes an accessory building as a small detached building. That provision of the zoning ordinances describing an accessory building also provides:

"If such accessor_building is located in a compartment which is an integral part of the main building it shall observe the Yard Requirements for the main building."

It was the contention of the appellee, plaintiff below, and also of his attorney in the trial of the cause that the garage was not directly attached as required by the dedication and that the width of the house was considerably longer—wider than the restrictions permitted and that the proper dispensation of the width had not been com-

plied with. It must be also noted that in attempting to develop this contention appellee admitted in his testimony that if the garage was directly attached there was no merit to his principal contention as to the side space issue.

Appellee while testifying was asked this question by appellant's attorney:

"Q. Now, it is not your contention that if this garage is an integral or component part of the house that it is located too close to the north building limit line of Mr. Dodson's plot, is it?"

Appellee answered:

"A. Well, now, you are just talking about one branch of the case perhaps. Of course, I contend that it is not directly attached as required by the restrictions, and of course, *if it is directly attached, then I don't know of any valid fault to be found as far as the side space is concerned.*"

As this answer was given by appellee, appellee's attorney said:

"Let me object to that question, Your Honor. There is another basis that has been alleged that I am sure counsel for defendant is aware of, that *the width of the house is considerably longer—wider than the restrictions* permit on these lots, and it is the contention of the plaintiff that the proper dispensation of this width has not been complied with."

These two objections reveal the main elements complained of by appellee. The issues will be developed in the light of appellee's contentions that he is entitled to a mandatory injunction upon such issues.

The appellant, desiring to build upon his property here in question, first hired an architect to draw the plans for the building in question and instructed him to prepare the plans to comply with the building restrictions in the addition. After the architect completed the plans, the appellant took the plans to Charles Wolflin for his approval and, at that time, discussed with him the fact that the building exceeded 80% of the width of the plot. After examining the plans, Mr. Wolflin approved them. Thereafter, appellant made application to the city engineering department of the City of Amarillo for a permit for the construction of the house in question and, at that time, filed with the department two copies of the plans as prepared by the architect and as was required by the city ordinance and he was thereafter granted a building permit by the city building inspector who was authorized by city ordinance to issue the same. Construction was then commenced by the completion of the foundation which was constructed of concrete with reinforcing steel and bonding steel. The entire foundation for the house, passageway and integrated garage and room therein was continuous throughout and formed a single foundation for the entire structure. The undisputed evidence reveals that the entire structure was being built according to the plans submitted to the city engineering department and for which structure the city had granted its permit.

The residence proper faced in a southwesterly direction with the covered passageway extending north and the room and garage extending east and west from the south end of said covered passageway. The west side of the covered passageway was a solid brick wall with opening with overhanging door. The passageway was reinforced and a part of the entire foundation and was a part of the compartment constituting the part lying between the garage and residence proper to be used as a place for the family to use and entertain their friends. The evidence in the cause and the photographs reveal beyond controversy that this entire structure constituted an integral dwelling and home following a unified and complete architectural design and plan.

We have not been cited to a Texas case directly in point here and neither have we found one but the case of *Olson v. Zoning Board of Appeal of Attleboro,* 324 Mass.

57, 84 N.E.2d 544, 545 is directly in point here. In the Olson case, the court said:

"In our opinion the garage, so called breezeway and house constitute one building. We are aided in reaching this conclusion by a photograph which is in evidence. Certainly they were designed to produce a unified architectural effect."

█ We were aided in this case by the testimony, by the definition of "main building" as set out in the city ordinance, and by the many pictures in arriving at an opinion that the improvements on the lot constitute one building. A ruling that this entire structure does not constitute one building would be doing violence to the complete architectural design and consummated plan of building. There are furnishings for the passageway; light connections to be used for tables and general use on all that portion between the house proper and the garage. That part of the structure east of the passageway, according to the evidence, is hidden from the view of the street and was architecturally designed for an outdoor patio or living space as it was designed to be used for the general comfort and pleasure of the family. We are of the opinion and so hold that the entire structure constitutes one main building. A finding otherwise is to completely discard all modern developments in architectural and practical design as attained in the past twenty-five years and to return to the era of the woodshed, coal bin, carriage house and other outhouses. Appellant's first, third and fourth points of error are sustained.

█ By appellant's second assignment of error, he complains of the trial court's holding that the garage was an outbuilding within the meaning of the dedication of Wolflin Estates. Since we have held that the entire structure was one main building, appellant's second point of error is sustained.

Appellant's fifth, sixth, seventh and eighth assignments of error are presented together and complain of the trial court's conclusions of law Nos. 6, 7, 8, 9 and 10. In such conclusions of law, the trial court in effect held that the power reserved by Mrs. Wolflin in the dedication of Wolflin Estates to approve plans for improvements to be erected therein and to grant exceptions to the provisions of the dedication relating to the over-all width of such structures was a power reserved to herself and unless authorized by Paragraph 16 of the dedication, could not be delegated to another person. The court in this connection further ruled that Mrs. Wolflin did not by a power of attorney, or in any other manner, delegate to any person the power to approve plans for structures to be erected in Wolflin Estates or the power to grant exceptions to the restrictions relating to the over-all width of such structures. The court then held that appellant, Dodson, did not and had never secured consent from Mrs. Wolflin permitting him to build his house, covered passageway and garage with a width of more than 80% of the width of his property measured at the front building limit line and that appellant's house, covered passageway and garage being in excess of the width permitted by the restrictions in the deed violated such restrictions, and that Mrs. Wolflin had no power to amend such restrictions as set forth in the deed and any approval Mrs. Wolflin might have given to the plans for appellant's residence operated as an amendment to such restrictions.

It is provided in Section 6 of said dedication as follows:

"* * * provided that no residence, including attached garages, attached greenhouses, enclosed or unenclosed porches but exclusive projections listed above shall occupy more than 80% of the width of the plot measured at the front building limit line. It is provided, however, that the maximum width of any residence which may be erected on any of said lots may with the consent in writing of the 'owner' be increased by not to exceed 10% of the width of any such plot measured as above provided."

From an examination of the powers reserved by Mrs. Wolflin, it is readily apparent that the waiver of the 80% over-all width was an issue of minor importance in the light of the broad power specified in the original dedication as follows:

"3. Approval of plans. No building, fence, wall or other structure shall be commenced, erected, or maintained, nor shall any addition thereto or change or outside alterations therein be made, until plans and specifications, plot, plan, and grading plan therefor, or information satisfactory to the 'owner' shall have been submitted to and approved in writing by the 'owner'. In so passing upon such plans, specifications and other requirements the 'owner' may take into consideration the suitability of the proposed building or other structure, and of the materials of it is to be built to the site upon which it is proposed to erect same, the harmony thereof with the surroundings, and the effect of the building or other structure as planned on the outlook from neighboring property. It shall never be necessary to record any approval under the provisions hereof, and such plans shall be approved by the 'owner' if the same reasonably comply with the general scheme of development of said estates."

We shall first consider whether Mrs. Wolflin could give appellant the right to increase such building to the extent of 10% of the width of his plot of ground and then if such right could be exercised by Mrs. Wolflin whether she could give to her son and agent, Charles Wolflin, the same power.

We cannot agree with the holding of the trial court as set out in its conclusions of law No. 10 where it is stated:

"10. Mrs. A. E. Wolflin had no power to amend the restrictions as set forth in the Dedication of Wolflin Estates and no approval she might have given to the plans for the defendant's residence operates as an amendment of such restrictions."

That part of the dedication heretofore set out permitting the maximum width to be increased (with owner's consent) not to exceed 10% of the width of any such plot is a provision of the original dedication and Mrs. Wolflin in exercising the right to waive certain elements of the restrictions would not thereby be amending the restrictions set forth in the dedication. Such action by Mrs. Wolflin would merely be the exercise of a power and right retained by her as owner under the original dedication of record. The appellee admits in his brief at pages 59–60 that Mrs. Wolflin had the power to grant this increase in width and also that all purchasers of lots in the addition were bound by the judgment and discretion of Mrs. Wolflin but contends that because the exercise of such right required judgment and discretion upon Mrs. Wolflin's part and such power being reserved for the benefit of all the lot owners in the addition, she could not assign this right to Charles Wolflin. It cannot be successfully contended that Mrs. Wolflin did not retain the right to assign any of the rights or reservations retained by her in said dedication as shown by paragraph 16 of the dedication where it is stated:

"The 'owner' may by appropriate instrument assign or convey to any person or corporation any or all of the rights, reservations and privileges herein reserved by her, and upon said assignment or conveyance made her assigns or grantee may at their option exercise, transfer or assign such rights, reservations, easement and privilege or any one or more of them and any time or times in the same way and manner as though directly reserved by them or it in this instrument."

At the time Mrs. Wolflin made this dedication, she was the sole owner of the property and had the authority to place such restrictions thereon as she saw fit so long as the same were not in violation of law and repugnant to the general scheme. At the time of the dedication no person other than Mrs. Wolflin owned any part of the addition and she was acting alone for herself.

In formulating the plans and dedication of the addition, Mrs. Wolflin was not an agent of prospective purchasers as yet unknown but was the principal and had the right to assign to her agent any right or thing that she could lawfully do herself and could authorize her agent to use discretion as stated in Somerville v. Smith, Tex.Civ. App., 200 S.W.2d 242, 245:

"It was also held that agency necessarily involved the right of control by the principal of the acts of the agent. Of course this is very true, yet it cannot be said that the relationship of principal and agent is absent if the purported principal clothes his agent with power and authority to exercise his own judgment in accomplishing a given task assigned by the principal; the principal may delegate to the agent certain discretionary matters as to the means employed to accomplish the task assigned him. This is better illustrated by a principal selecting a foreman over a crew of men to do a piece of work, and while the principal has control over his foreman, yet leaves it to such foreman as to how the details are worked out. In such cases the foreman is nonetheless an agent, and so long as he is within the scope of authority given him, he acts for his principal."

■ We are familiar with the principle of law as asserted herein by the appellee, that an agent who must exercise his discretion, skill and judgment in the performance of his duties cannot delegate that authority to another without the consent of his principal but that principle of law does not apply here. Mrs. Wolflin was not acting as agent for the purchasers of lots in this addition but was the principal and owner in selecting and appointing her son as her agent. And there is no contention even by appellant that Mrs. Wolflin's agent, Charles Wolflin, was trying to delegate the authority given him to anyone else. Further, as stated in 2 C.J.S., Agency, § 134, p. 1358, only the principal can invoke the rule that the authority of an agent cannot be delegated and it cannot be invoked by the agent

to avoid the acts of sub-agents or a third person whose rights cannot be affected. But the governing principle here is not that asserted by appellee as Mrs. Wolflin was, under the undisputed record, the principal at all times in regard to the establishment of the addition, and never the agent of anyone.

■ It is the further contention of appellee that the powers which Mrs. Wolflin reserved were reserved to be exercised by her for the benefit of all the lot owners in the addition. This assertion is partially correct but it does not follow that the purchasers can complain of or control Mrs. Wolflin's exercise of the powers reserved by her in the original dedication. Further, such reservation was also for the benefit of Mrs. Wolflin in developing the addition.

The undisputed record reveals that Charles Wolflin had managed all the affairs of Mrs. Wolflin with relation to this addition since June 18, 1926. He caused the dedication of the addition to be prepared and filed of record. He also waived compliance with the restrictions as contained in the dedication. The undisputed record further reveals that his authority to act with reference to the above matters was never questioned by Mrs. Wolflin and the record nowhere reveals that Charles Wolflin lacked authority or power to perform such acts. Brinker v. First Nat. Bank of Cleveland, 37 S.W.2d 136 by Commission of Appeals, and Moore v. El Paso Chamber of Commerce, Tex.Civ.App., 220 S.W.2d 327, Syl. 5. And each owner purchased his respective property with full knowledge of such recorded restrictions. Appellant's fifth, sixth, seventh and eighth assignments of error are sustained.

Since we have held that the entire building is one architectural structure, appellant's ninth, tenth and eleventh assignments of error are sustained.

■ By appellant's twelfth and thirteenth points of error, presented jointly, he complains of the holding of the trial court that the findings and holding of the build-

ing inspector was in no manner binding on the trial court and that the building permit issued by the building inspector was void. The appellee pleaded the ordinances of the City of Amarillo and pleaded that the use of this property was governed by such ordinance. It was stipulated by the parties herein that after Ordinance 1874 was passed a board of adjustment of the City of Amarillo was duly and legally appointed and acting at all times pertinent to the matters involved in this controversy. Such ordinances also provided the proper steps to be taken to secure a building permit from the building inspector and also the manner of appeal from the acts of the inspector to the board of adjustment by anyone aggrieved. There is no proof of any kind in this record that appellant failed to comply with such requirements but appellant testified he made application for such permit and filed with the department two copies of the plans as prepared by the architect and the building permit was granted all as prescribed by such ordinance. Such permit as duly issued under the ordinance by the building inspector was introduced in evidence. No appeal was taken by appellant from the action of the building inspector in granting such permit. The undisputed evidence is that the structure was being completed according to the plans that were submitted in securing the permit. The structure fully complies with the provisions of the ordinance prescribing the requirements of "main building". The appellee relies mainly upon the case of Davis v. City of Abilene, Tex.Civ.App., 250 S.W.2d 685, 688. We are of the opinion that such case does not sustain appellee's position herein but under the record in this cause fully sustains the appellant's position on the issue. In the above cited case, it was an uncontroverted fact that the permit was in violation of the ordinance of the City of Abilene in that it permitted the building in issue to be built 7 feet from the property line when the ordinance required such distance to be 25 feet. Further, the actual construction was within 5½ feet of the property line while the permit as issued required a distance of 7 feet. The court there stated:

"The Rosenthal case [Rosenthal v. City of Dallas, Tex.Civ.App., 211 S.W. 2d 279] differs essentially from the instant case. In that case the permit was issued to Rosenthal for the operation of a cold storage plant, including meat curing, based upon a specific finding of fact by the building inspector of the City that such non-conforming use existed prior to the time of the enactment of the City's ordinance. The finding was supported by substantial evidence. No appeal was prosecuted by either city officials or interested individuals. The court held that the action of the building inspector became, in a sense, res adjudicata and that the city was estopped from revoking the permit. If the business of a cold storage plant, including the storage and curing of meat, was operated on the property prior to the enactment of the zoning ordinance, the rights of the owners of such property to operate that business or a similar business had become vested. When Rosenthal bought the property he acquired this vested right. The specific finding by the building inspector of the City of Dallas that these facts existed when such finding was supported by evidence required the holding made in the Rosenthal case. No such facts exist in the instant case."

In the case of Rosenthal v. City of Dallas, Tex.Civ.App., 211 S.W.2d 279, 291, writ N.R.E. by the Supreme Court, it is stated:

"The building inspector was the only City official who could lawfully determine the *existence of facts* supporting the non-conforming use and the *classification of the operations* proposed by the appellant; and the determination of these questions being placed upon the inspector by the legislature and the City Council, *his rulings when supported by evidence* as in the instant case, *cannot be attacked except by ap-*

*peal as provided in \Art. 1011g.* See Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424, 441, where established rules of administrative law are set forth to the effect that the determination of facts by a designated Board or official cannot be overturned and the court's judgment substituted, where such determination is supported by substantial evidence; and the Supreme Court has stated the rule in the case cited above as follows: 'The court is not to substitute its discretion for that committed to the agency by the Legislature, but is to sustain the agency if it is reasonably supported by substantial evidence before the court.'" (Emphasis ours.)

We are of the opinion that the same issues in the Rosenthal case are involved here and that in the cause here in issue the rulings of the building inspector and his construction under the ordinance defining "Main Building" and other factual elements was a reasonable one. Appellant's twelfth and thirteenth assignments of error are sustained.

In this cause appellee presented evidence that he suffered damage in the sum of $3,000 and it is a reasonable presumption from the record that appellant could respond in damages if such were decreed. A judgment of this Court sustaining the action of the trial court in issuing the mandatory injunction here in issue would be, in our opinion, wholly contrary to the principles of equity. The judgment of the trial court requiring appellant to sever his garage and room therein from the integrated structure of which it was a part and to remove the same, with foundation, wholly apart therefrom, would place the garage in an incongruous position in relation to the remainder of the original structure, would leave the covered passageway extending out into void space and wholly impair the usefulness of the enclosed patio and living area. Such action of the courts would effect a total destruction of the original architectural design and plan of appellant's dwelling and irreparably damage the same as an integrated structure of the value of $50,000.

In our opinion, the mandatory writ of injunction was improperly granted. The judgment of the trial court is reversed and the injunction granted by the trial court is dissolved and judgment is rendered that all relief asked for by appellee be denied.