**Pat G. NOEL et al., Appellants,**

**v.**

**Alan B. HUVARD et al., Appellees.**

**No. 14667.**

Court of Civil Appeals of Texas.

Houston.

Oct. 28, 1965.

Vinson, Elkins, Weems & Searls, Robert M. Julian, Houston, for appellants.

Haynes & Fullenweider, Donn C. Fullenweider, Houston, for appellees Alan B. Huvard and Frank R. Glass.

Baker, Botts, Shepherd & Coates, J. Daffan Caldwell, Houston, for appellee First Memorial Glen Corp.

BELL, Chief Justice.

This is an appeal from an order of the trial court denying a temporary injunction.

Appellants, as owners of lots in Memorial Glen, Section 3, brought suit against Alan B. Huvard, a house builder, and Frank R. Glass, the owner of Lot 100 in said addition, to enjoin Huvard from building a house on the lot for Glass. The basis of the suit was the contention that the proposed house violated the restrictions applicable in that the residence did not front on the abutting street and that it did not conform in harmony of external design with existing structures. Here appellants also contend the plans for the improvements were not approved in writing by the architectural control committee as required by the restrictions.

 We are of the view that there was no pleading sufficient to support an issue as to whether the plans had been approved in writing by such committee. The complaint in the pleading was that in fact the improvements did not conform in harmony in external design with existing structures.

The evidence shows that Renoir Street runs in a north and south direction and ends in a cul-de-sac. Glass's lot abuts on its west side on the cul-de-sac. At the time of trial no improvements had been constructed. We gather from meager testimony that there had been some staking on the lot indicating the form the improvements were to take. From an exhibit labeled "Site Plan," which is a drawing that leaves much to be desired, we decipher what we recite immediately below.

On the northern portion of the lot is a driveway that runs east from the cul-de-sac of Renoir Street on which the lot abuts. The driveway runs directly to what appears to be the garage the entrance to which fronts toward the street. To the south of the garage and connected with it in the manner we shall notice below is what appears to be the house. There is a passageway shown leading from the southeast side of the garage to the house. Just west of the entrance to the garage leading from the driveway is a sidewalk that leads to a stoop on the north side of the house where an entrance is shown. On the south side of the garage between the house to the south, the passageway on the east and the sidewalk on the west is a square area labeled "court". What is apparently the residence part of the improvements runs lengthwise from west to east. No description of entrance doors is given in the testimony nor does it clearly appear on the plat. From the plat, however, it dimly appears there is an entrance to the house from the passageway and an entrance from the "court" to the house, and an entrance at the stoop. While the entrances, except for the garage, are on the north, the trial court could have well concluded that architecturally and physically the garage and the house constitute one improvement and since the entrance to the garage portion is clearly fronting on Renoir the requirement of the restriction is met. It is noted that the restriction does not say the residence or house shall front on the street. It uses the term "improvement". From our description it can well be concluded that

there is but one improvement that is so arranged that part is used for a garage and part for the family to have its living quarters. This may have been the thought of the architect who testified the improvement fronted on Renoir.

■ We feel that where there is uniform architectural effect and the garage is connected with the residence there is but one improvement. This is frequently held to be true where an effort is made to say a restriction is violated that requires the garage to be set back beyond the house. Dodson v. Dooley, 280 S.W.2d 758 (CCA), ref., n. r. e.; Murtha et al. v. McGarry, 112 N.J.Eq. 454, 164 A. 698; Crowl et al. v. McDuffie, 134 So.2d 542 (Fla.App.) ; 20 Am.Jur.2d 222. Actually and architecturally there seems to be but one improvement and it fronts, or, at least the trial court could have so found, on Renoir Street.

In any event there was a conflict between witnesses in their conclusion as to which way the improvement fronted, though they do not state the basis of the conclusion.

■ It appears from the testimony of the architect who was on the control committee that the improvement was in harmony with other structures in the addition. He and the others on the committee had examined the plans and had approved them as calling for a house that was in harmony with existing structures. While there was a written approval signed by a member of the control committee for the Third Memorial Glen Corporation, the testimony is susceptible to the construction that in fact the committee had made the approval. While their approval was not in writing, pleading in the case makes no issue of such omission. The testimony does show the improvement will be the only one having a flat roof. However, we cannot say this alone prevents generally harmony of design with the other improvements. The architect who testified said it did not.

In passing on the action of the trial court in refusing or granting a temporary injunction, in determining whether he abused his discretion, we look to see if there were difficult questions of law or fact. If there were, we will not disturb his action. Here, particularly, in the light of a rather fragmentary development of the facts, difficult questions of fact were presented. Anderson v. Tall Timbers Corp., 162 Tex. 450, 347 S.W.2d 592 (S.Ct.). The burden of making clear proof is on the plaintiffs. They did not discharge that burden.

Affirmed.